JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Robert and Marie Buzard,
Individually and as Next Friends to Trenton Buzard

**DEFENDANTS**
General Motors, LLC

**(b)** County of Residence of First Listed Plaintiff    Clarion County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Wayne County, Michigan
*(IN U.S. PLAINTIFF CASES)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert Ross, Esquire, Ross Feller Casey, LLP
One Liberty Place, Suite 3450
1650 Market Street, Phila., PA 19103

Attorneys *(If Known)*
William J. Ricci, Esquire/Francis J. Grey, Jr., Esquire
Ricci Tyrrell Johnson & Grey
Eight Penn Center, Suite 2000, Phila., PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government   Plaintiff
- ☐ 2   U.S. Government   Defendant
- ☒ 3   Federal Question    *(U.S. Government Not a Party)*
- ☐ 4   Diversity    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 1452 Federal Rule of Bankruptcy Procedure 9027

Brief description of cause:
Motor Vehicle Product Liability Action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*

JUDGE   Jesse M. Furman    DOCKET NUMBER   MDL2543

DATE
06/12/2014

SIGNATURE OF ATTORNEY OF RECORD
*William J. Ricci*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:      199 Allison Street, New Bethlehem, PA 16242

Address of Defendant:      2595 Interstate Dr., Suite 103, Harrisburg, PA 17110

Place of Accident, Incident or Transaction:      Clarion County, Pennsylvania
                                                 (*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?                                                    Yes ■   No ☐
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))

Does this case involve multidistrict litigation possibilities?                          Yes ■   No ☐
RELATED CASE, IF ANY:
Case Number: **MDL2543**          Judge: **Jesse M. Furman**          Date Terminated:
Civil cases are deemed related when yes is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?                                                    Yes ☐   No ■
2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?                          Yes ☐   No ■
3.   Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                Yes ☐   No ■
4.   Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?                                                        Yes ☐   No ■

CIVIL: (Place X in ONE CATEGORY ONLY)

| A. *Federal Question Cases*: | B. *Diversity Jurisdiction Cases*: |
|---|---|
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act – Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. ☐ Other Personal Injury (Please specify): Negligence |
| 7. ☐ Civil Rights | 7. ☐ Products Liability |
| 8. ☐ Habeas Corpus | 8. ☐ Products Liability — Asbestos |
| 9. ☐ Securities Act(s) Cases | 9. ☐ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) |
| 11. xx All other Federal Question Cases | Premises Liability |
| (Please specify **28 USC § 1452,** **11 USC § 101 et seq**) | |

**ARBITRATION CERTIFICATION**
(*Check Appropriate Category*)

I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.
DATE:        [date]                          [attorney name]                  [attorney ID#]
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:        June 12, 2014_____          William J. Ricci, Esquire          27708
             date                          attorney name                  attorney ID#

CIV. 609 (5/2012)

{7616.00002:00112975 }

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| ROBERT AND MARIE BUZARD<br>Individually and as Next Friends to Trenton<br>Buzard<br>    *Petitioners-Plaintiffs* | :<br>:<br>:<br>: |
|           v. | :   CIVIL ACTION<br>: |
| GENERAL MOTORS LLC and ELLIS<br>MOTORS, INC.<br>    *Respondent-Defendants,* | :<br>:<br>:<br>:<br>: |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS

(a)     Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.    ☐

(b)     Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ☐

(c)     Arbitration – Cases required to be designated for arbitration under Local Civil Rule 8.    ☐

(d)     Asbestos—Cases involving claims for personal injury or property damage from exposure to asbestos.    ☐

(e)     Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ☐

(f)     Standard Management – Cases that do not fall into any one of the other tracks.    ☒

*6/12/14*
(Date)

*William J Ricci.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT AND MARIE BUZARD, Individually and as Next Friends to Trenton Buzard | § § § § | |
| *Petitioners-Plaintiffs,* | § § | |
| vs. | § § | CIVIL ACTION No. |
| GENERAL MOTORS LLC and ELLIS MOTORS, INC. | § § § | |
| *Respondent-Defendants,* | § | |

---

## NOTICE OF REMOVAL

Defendant General Motors LLC ("New GM") removes this action ("Action") from the Court of Common Pleas, Philadelphia County, Pennsylvania (No. 00377, May 2014 Term) to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), based on the following facts:

## BACKGROUND

1.      This Action is a civil proceeding which arises under, or in, title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"). Therefore, this Court has jurisdiction of the Action under 28 U.S.C. §§ 157(b), 1331 and 1334(b), and it may be removed to this Court under 28 U.S.C. §§ 1452(a) and/or 1441(b) and Bankruptcy Rule 9027.

2.     According to Plaintiffs' Civil Action Complaint, on April 2, 2009, T.B., a minor, suffered personal injuries in a motor vehicle accident in which he was a passenger in a 2005 Chevrolet Cobalt due to an allegedly defective ignition switch.

3.     This action is one of at least 91 actions (the "Ignition Switch Actions") filed in or removed to federal court since February 2014 that include factual allegations involving allegedly defective ignition switches.  The Ignition Switch Actions have been brought in at least 32 federal district courts across the country, including in Alabama, Arizona, Arkansas, California, Colorado (dismissed), the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, and Texas.

4.     On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("JPML") established MDL 2543, *In re: General Motors LLC Ignition Switch Litigation*.  Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions.  (*In re General Motors LLC Ignition Switch Litigation*, MDL No. 2543, ECF No. 266 (J.P.M.L. June 9, 2014) (attached hereto as Ex. 2.)  The JPML transferred an initial group of fifteen actions pending in six federal districts to the Southern District of New York after concluding that it was "undisputed" that cases alleging a defect in the vehicle ignition switch of certain New GM vehicles satisfied the requirements for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.  (*Id.* at 2.)  In addition to the fifteen cases that already have been transferred, the JPML "has been notified of 74 related actions pending in 31 district courts.  These and any other related actions are potential tag-along actions."  (*Id.* at 1, n.1.)  Because there were no personal injury actions

2

before the JPML in the initial group of fifteen cases subject to transfer, the JPML did "not determine at this time whether their inclusion in centralized proceedings with the economic loss actions is appropriate.  Any arguments regarding the inclusion of personal injury actions in centralized proceedings will be considered if and when the actions are placed on a conditional transfer order."  (*Id.* at 2, n.3.)[1]

5.     Concurrently with the filing of this removal petition, as soon as this case is assigned a docket number, New GM will give notice to the JPML of this case as a tag-along action pursuant to Panel Rule 7.1.  Because it arises from the same ignition switch issues alleged in the other Ignition Switch Actions, this case is appropriate for MDL transfer and consolidation with the other Ignition Switch Actions pending in the Southern District of New York.  *See* 28 U.S.C. § 1407(a).

## BASIS FOR REMOVAL

6.     On June 1, 2009 ("Petition Date"), Motors Liquidation Company, f/k/a General Motors Corporation ("Old GM") filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court").

7.     On July 5, 2009, the New York Bankruptcy Court issued an order ("Sale Order and Injunction") approving the sale ("363 Sale") of substantially all of Old GM's assets to the

---

[1]     Notwithstanding the JPML's reservation of this issue because there were no personal injury actions before it, there is substantial precedent for consolidation and coordination of economic loss and personal injury actions that share common questions of fact in a single MDL.  *See, e.g., In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, Products Liability Litig.*, 704 F. Supp. 2d 1379, 1381 (J.P.M.L. 2010) ( "the personal injury and wrongful death cases" can be consolidated with "the economic damage"); *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352, 1354-55 (J.P.M.L. 2010) ("We also conclude that it makes sense to include the personal injury/wrongful death actions"); *In re: Zicam Cold Remedy Marketing and Sales Practices Litig.*, 655 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2009) ("We also decline to separate purported consumer class actions from other actions alleging only personal injury.").

3

Purchaser, defined as "NGMCO, Inc., a Delaware corporation and successor-in-interest to Vehicle Acquisition Holdings LLC, a Delaware limited liability company. The sale of assets was free and clear of all liens, claims, encumbrances, except for certain limited exceptions not applicable here. *See* Sale Order and Injunction attached as Exhibit 1, ¶ 7. The 363 Sale was consummated on July 10, 2009. Ultimately, New GM was transferred Old GM's assets and also assumed certain limited liabilities, as outlined in the Sale Order and Injunction and Amended and Restated Master Sale and Purchase Agreement.

8.      The Sale Order and Injunction is a final order and no longer subject to any appeal.

9.      Under the terms of the Sale Order and Injunction, and the Amended and Restated Master Sale and Purchase Agreement ("ARMSPA") which it approved, all liabilities relating to vehicles and parts sold by Old GM (subject to limited exceptions not applicable here) were legacy liabilities retained by Old GM. *See* Exhibit 1, at ¶¶ 44-45; *see also In re Gen. Motors Corp.*, 407 B.R. 463, 481 (Bankr. S.D.N.Y. 2009), *aff'd sub nom., In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010). The Bankruptcy Court's Sale Order and Injunction explicitly provides that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009. *See* Exhibit 1, ¶¶ 46, 9 & 8. This includes, in particular, "all Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date [July 10, 2009]." ARMSPA § 2.3(b)(ix). The Order also enjoins "[a]ll persons and entities . . . holding claims against [Old GM] or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing. . . from asserting [such claims] against [New GM]. . . ." *See* Exhibit 1, ¶ 8. This

4

injunction expressly applies to rights or claims "based on any successor or transferee liability." *Id.* ¶ 46.

10.     The Bankruptcy Court reserved exclusive and continuing jurisdiction to enforce its injunction and to address and resolve all controversies concerning the interpretation and enforcement of the Sale Order and Injunction. *Id.* at ¶¶ 48-49.  Old GM's bankruptcy case is still pending in the Bankruptcy Court, and that Court has previously exercised its exclusive and continuing jurisdiction to enforce the Sale Order and Injunction to actions filed against New GM, including cases based on alleged defects in Old GM vehicles. *See Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 12-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 09-00509, 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012), *aff'd*, 500 B.R. 333 (S.D.N.Y. 2013); *see also In re Motors Liquidation Co.*, 2011 WL 6119664 (Bankr. S.D.N.Y. 2010).

11.     Under 28 U.S.C. §§ 157(b) and 1334(b), the New York Bankruptcy Court had core jurisdiction to approve the 363 Sale and enter the Sale Order and Injunction. Thus, this Action and any dispute concerning the Sale Order and Injunction, and the ARMSPA, are subject to the core jurisdiction of the New York Bankruptcy Court. *See In re Hereford Biofuels, L.P.*, 466 B.R. 841, 844 (Bankr. N.D. Tex. 2012) (post-confirmation dispute regarding interpretation and enforcement of a sale order was a core proceeding); *Luan Investment S.E. v. Franklin 145 Corp.*, 304 F.3d 223, 229-30 (2d Cir. 2002) (disputes concerning Bankruptcy Court's sale order fall within "core" jurisdiction); *In re Eveleth Mines, LLC*, 312 B.R. 634, 644-45 and n.14 (Bankr. D. Minn. 2004) ("A purchaser that relies on the terms of a bankruptcy court's order, and whose title and rights are given life by that order, should have a forum in the issuing court.").

5

12.     Based on the foregoing, because Plaintiffs' claims are based on a vehicle and parts manufactured by Old GM, and a motor vehicle accident predating Old GM's bankruptcy petition, their Complaint necessarily requires judicial construction and/or interpretation of the Sale Order and Injunction.  As such, the Action implicates the Bankruptcy Court's core and exclusive jurisdiction, and is therefore removable to this Court under 28 U.S.C. §§ 1452(a) and/or 1441(b), and Bankruptcy Rule 9027.

## REMOVAL IS TIMELY

13.     New GM files this Notice of Removal of Action pursuant to 28 U.S.C. § 1446(b). Specifically, Plaintiffs filed suit on May 6, 2014, and New GM was served with the Petition and Citation on May 13, 2014.  This Removal is filed within thirty days of service of both the Citation and Petition.

## VENUE

14.     The Eastern District of Pennsylvania is the United States district court embracing Philadelphia County, Pennsylvania, the county in which the State Court Action was filed and is pending.  *See* 28 U.S.C. § 118(a).  Therefore, venue of this removed action is proper in this Court.

## CONSENT

15.     At the time of filing this Removal, Defendant General Motors LLC has been served with the Citation.  Consent of other named defendants is not needed

16.     As provided in 28 U.S.C. § 1446(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  Because this Action is being removed pursuant to 28

6

U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure, consent of the other named defendants is not necessary.

## NOTICE TO THE STATE COURT

17.     A copy of this Notice of Removal will be filed in the Court of Common Pleas, Philadelphia County, Pennsylvania, and will be served upon Plaintiffs through their counsel promptly after the filing of this Notice of Removal.

## STATE COURT PLEADINGS PROVIDED

18.     Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal is accompanied by copies of all process, pleadings, and orders served upon General Motors LLC in such action.

Dated: June 12, 2014

Respectfully submitted,

By: _William J. Ricci_

William J. Ricci, Esquire
PA I.D. No. 27708
bricci@rtjglaw.com
Francis J. Grey, Jr., Esquire
P.A. I.D. 56145
fgrey@rtjglaw.com
Eight Penn Center, Suite 2000
1628 John F. Kennedy Boulevard
Philadelphia, PA  19103

**ATTORNEYS FOR GENERAL MOTORS LLC**

7

## CERTIFICATE OF SERVICE

I hereby certify that I will serve a true and correct copy of this Notice of Removal in accordance with Federal Rules of Civil Procedure on all parties not served electronically.

Robert Ross, Esquire
Joel Feller, Esquire
Matthew Casey, Esquire
Roberta Golden, Esquire
Ross Feller Casey, LLP
One Liberty Place, Suite 3450
1650 Market Street, Suite 3450
Philadelphia, PA  19103
*Attorneys for Plaintiffs*

Michael E. Henry, Esquire
Thomas J. Henry – Injury Attorneys
521 Starr Street
Corpus Christi, TX  78401
*Attorneys for Plaintiffs*

Ellis Motors, Inc.
6630 Oakland Street
Philadelphia, PA  19149

Robert C. Hilliard, Esquire
Rudy Gonzales, Jr., Esquire
Catherine D. Tobin, Esquire
Marion Reilly, Esquire
Hilliard Munoz Gonzales LLP
719 S. Shoreline Boulevard
Suite 55
Corpus Christi, TX  78401

RICCI TYRRELL JOHNSON & GREY

BY: _William J. Ricci_
William J. Ricci, Esquire

Dated:  June 12, 2014

8

**RICCI TYRRELL JOHNSON & GREY**
**BY:  William J. Ricci, Esquire**
IDENTIFICATION NO.  27708
EIGHT PENN CENTER
1628 JOHN F. KENNEDY BLVD SUITE 2000
PHILADELPHIA, PA 19103
(215) 320-3260

ATTORNEY FOR  Defendant, General Motors, LLC

*Filed and Attested by
PROTHONOTARY
02 JUN 2014 03:55 pm
E. MASCUILLI*

| | |
|---|---|
| ROBERT and MARIE BUZARD, individually and as next friends to TRENTON BUZARD | *COURT OF COMMON PLEAS DIVISION* |
| Plaintiff(s) | MAY *TERM*, 2014 |
| v. | Number00377 |
| GENERAL MOTORS, LLC and ELLIS MOTORS, INC. | |
| Defendant(s) | |

## ENTRY OF APPEARANCE

### TO THE PROTHONOTARY:

    Kindly enter my appearance on behalf of defendant, General Motors, LLC, in the above referenced matter.

                       **RICCI TYRRELL JOHNSON & GREY**

                       BY:   *s/ WILLIAM J. RICCI*
                             William J. Ricci, Esquire
                             Attorney for Defendant,
                             General Motors, LLC

Dated:  June 2, 2014

## CERTIFICATE OF SERVICE

I hereby certify that I will serve a true and correct copy of the Entry of Appearance on behalf of General Motors, LLC in accordance with Pa.R.C.P. 440 on all parties not served electronically.  All other parties will be electronically served by the court in accordance with Pa.R.C.P. 205.4(g).

Robert Ross, Esquire
Joel Feller, Esquire
Matthew Casey, Esquire
Roberta Golden, Esquire
Ross Feller Casey, LLP
One Liberty Place, Suite 3450
1650 Market Street, Suite 3450
Philadelphia, PA  19103
*Attorneys for Plaintiffs*

Michael E. Henry, Esquire
Thomas J. Henry – Injury Attorneys
521 Starr Street
Corpus Christi, TX  78401
*Attorneys for Plaintiffs*

Ellis Motors, Inc.
6630 Oakland Street
Philadelphia, PA  19149

Robert C. Hilliard, Esquire
Rudy Gonzales, Jr., Esquire
Catherine D. Tobin, Esquire
Marion Reilly, Esquire
Hillard Munoz Gonzales LLP
719 S. Shoreline Boulevard
Suite 55
Corpus Christi, TX  78401

RICCI TYRRELL JOHNSON & GREY

BY:  s/William J. Ricci, Esquire
        William J. Ricci, Esquire

Dated:  June 2, 2014

# RETURN OF SERVICE

## DENNIS RICHMAN'S SERVICES FOR THE PROFESSIONAL INC.

1500 J.F.K. BOULEVARD • SUITE 1706 • PHILADELPHIA, PA 19102 • (215) 977-9393

| TO BE COMPLETED BY ATTORNEY (PLEASE ONE FORM FOR EACH DEFENDANT.) | COURT TERM AND NUMBER |
|---|---|
| PLAINTIFF/S/ Robert & Merie Buzard, Indiv. & as next friends to Trenton Buzard | May 2014 Filed and Attested by PROTHONOTARY # 0377 to MAY 2014 12:33 pm J. OSTROWSKI |
| DEFENDANT/S/ General Motors, LLC, et al | |

**SERVE AT** { NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC.
General Motors, LLC c/o Corporation Service Co.
ADDRESS (Street or RFD, Apartment No., City, Boro, Twp., State and ZIP Code)
2595 Interstate Dr., ste. 103, Harrisburg, PA 17110

INDICATE TYPE OF PLEADING ☐ SUMMONS ☒ COMPLAINT ☐

INDICATE UNUSUAL SERVICE: ☐ REG. MAIL ☐ DEPUTIZE ☐ POST ☐ OTHER

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE

Now, _May 9_ 20_14_ I, _Christine Navarro_ do hereby deputize the Sheriff of _Dauphin_ County to execute this Writ and make return thereof according to law. The deputation being made at the request and risk of the plaintiff.

Process Server _Christine Navarro_

## TO BE COMPLETED BY PROCESS SERVER

Served and made known to_____, Defendant(s)
on the _____day of _____ 20 _____, at _____o'clock, _____M.,
at _____, County of Phila. Commonwealth of Pennsylvania, in
the manner described below:

☐ Defendant(s) personally served.
☐ Adult family member with whom said Defendant(s) reside(s). Relationship is_____
☐ Adult in charge of Defendant's residence who refused to give name or relationship.
☐ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
☐ Agent or person in charge of Defendant's office or usual place of business._____
☐ _____ an officer of said Defendant company.
☐ Other _____

On the _____day of _____ 20 _____, at _____o'clock, _____M.
Defendant not found because:
☐ Moved      ☐ Unknown      ☐ No Answer      ☐ Vacant      ☐ Other_____
Comments_____

NAME OF SERVER
I, _____ hereby affirms that the information contained in the Return of Service is true and correct. This affirmation is made subject to the penalties of 18 PA C.S. 4904 relating to unsworn falsification to authorities.
Sworn to and subscribed before me
this _____ day of _____ 20 _____

_____
(Signature)

| TO BE COMPLETED BY ATTORNEY | TO BE COMPLETED BY PROTHONOTARY |
|---|---|
| Name Michael E. Henry, Esquire | |
| Address 521 Starr St., Corpus Christi, TX 78401 | |
| Telephone Number 361-985-0600 | ATTEST _____ |
| Identification Number 315091 | PRO PROTHY |
| Represents: | |
| ☐ Plaintiff(s) _____ | DATE _____ |
| ☐ Defendant(s) _____ | Case ID: 140500377 |
| ☐ Other _____ | |

# ®ffice of the Sheriff



Shelley Ruhl
Real Estate Deputy

Matthew L. Owens
Solicitor

Jack Duignan
Chief Deputy

Michael W. Rinehart
Assistant Chief Deputy

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

Jack Lotwick
Sheriff

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania** | : | ROBERT AND MARIE BUZARD, INDIVIDUALLY & AS NEXT FRIENDS TO TRENTON BUZARD |
| | | VS |
| **County of Dauphin** | : | GENERAL MOTORS, LLC |

Sheriff's Return
No. 2014-T-1533
OTHER COUNTY NO. 140500377

And now: MAY 13, 2014  at 1:06:00 PM served the within NOTICE & COMPLAINT upon

GENERAL MOTORS, LLC by personally handing to KAREN DYER *  1 true attested copy of the

original  NOTICE & COMPLAINT  and making known to him/her the contents thereof at C/O CSC,

2595 INTERSTATE DRIVE, SUITE 103 HARRISBURG PA 17110

* CUSTOMER SERVICE SPECIALIST

Sworn and subscribed to
before me this  13TH day of May, 2014

**COMMONWEALTH OF PENNSYLVANIA**
NOTARIAL SEAL
Karen M. Hoffman, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires January 8, 2018

So Answers,

Sheriff of Dauphin County, Pa.

By
Deputy Sheriff
Deputy: W CONWAY
Sheriff's Costs: $47.25 5/12/2014

Case ID: 140500377

**ROSS FELLER CASEY, LLP**
By:    ROBERT ROSS, ESQUIRE
       JOEL FELLER, ESQUIRE
       MATTHEW CASEY, ESQUIRE
       ROBERTA GOLDEN, ESQUIRE
I.D. NOS: 47152/68873/84443/52901
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000



Attorneys for Plaintiff

**THOMAS J. HENRY – INJURY ATTORNEYS**
By:    MICHAEL E. HENRY                    Attorney for Plaintiff
I.D. NO: 315091
521 Starr St.
Corpus Christi, Texas 78401
 (361) 985-0600

| | | |
|---|---|---|
| ROBERT AND MARIE BUZARD, | : | COURT OF COMMON PLEAS |
| individually and as next friends to | : | PHILADELPHIA COUNTY |
| TRENTON BUZARD | : | |
| 199 Allison Street | : | |
| New Bethlehem, Pennsylvania 16242 | : | |
| *Plaintiffs* | : | ____ TERM 2014 : |
| | | NO. _____ |
| v. | : | |
| GENERAL MOTORS, LLC | : | CIVIL ACTION – PRODUCT LIABILITY |
| c/o Corporation Service Company | : | |
| 2595 Interstate, Dr., Suite 103 | : | |
| Harrisburg, Pennsylvania 17110 | : | **JURY TRIAL DEMANDED** |
| | : | |
| ELLIS MOTORS, INC., | : | |
| 6630 Oakland Street | : | |
| Philadelphia, Pennsylvania 19149 | : | |
| *Defendants* | : | |

<u>**NOTICE TO PLEAD**</u>

1.

Case ID: 140500377

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

**ADVISO**

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL

ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICIOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

2.

Case ID: 140500377

## CIVIL ACTION COMPLAINT

COMES NOW Plaintiffs, ROBERT AND MARIE BUZARD, individually and as parents and natural guardians of TRENTON BUZARD, a minor (hereinafter, "Plaintiffs") and files their Original Petition, Request for Jury Trial, and in support of this petition would show the Court as follows:

### I.
### PARTIES

1.     Plaintiffs, ROBERT AND MARIE BUZARD, individually and as next friends to TRENTON BUZARD are individuals residing in New Bethlehem, Clarion County, Pennsylvania.

2.     Defendant GENERAL MOTORS, LLC ("New GM") is a Delaware limited liability company. With respect to the facts alleged and claims asserted in this Petition, New GM is the corporate successor of General Motors Corporation ("Old GM"), which filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1, 2009.  On July 10, 2009, New GM acquired substantially all of the assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  Plaintiff's causes of action in this lawsuit are brought against New GM, and Plaintiff does not assert any causes of action against Old GM. Although this Petition references facts against Old GM, it is for background and reference purposes only. At all times relevant to the claims in this lawsuit, New GM has been in the business of developing, manufacturing, and marketing cars throughout the State of Pennsylvania.  New GM has a network of authorized retailers that sells New GM vehicles and parts throughout Pennsylvania. General Motors, LLC may be served with process through its registered agent for service of process in the State of Pennsylvania, Corporation

3.

Service Company, 2595 Interstate, Dr., Suite 103, Harrisburg 17110.

3.     Defendant Ellis Motors, Inc. is a domestic corporation doing business in the state of Pennsylvania and may be served with process at 6630 Oakland Street, Philadelphia, Pennsylvania 19149.

## II.
## VENUE AND JURISDICTION

4.     This Court has jurisdiction over each Defendants because each either has its principal place of business in Pennsylvania, or does sufficient business in, or has sufficient minimum contacts with, or otherwise intentionally avails itself of the markets of the Commonwealth of Pennsylvania through its business operations in Pennsylvania.

5.     Venue is properly laid in this County pursuant to Pennsylvania Rules of Civil Procedure 1006 and 2179.

6.     The amount in controversy exceeds the local rules for amounts in controversy requiring arbitration.

## III.

## FACTS

7.     Esther Mathews (deceased Great-Grandmother of Trenton Buzard) owned a 2005 Chevrolet Cobalt, which she purchased new from Ellis Motors, Inc.  Esther Mathews purchased the 2005 Cobalt because of the vehicle's advertised quality, reliability, and safety features.  The 2005 Chevrolet Cobalt, Vehicle Identification Number (VIN):1G1AL52F857 (production sequence deleted), was manufactured in November 2004 and was purchased new by Esther Mathews.

8.     On April 2, 2009, Esther Mathews was driving her granddaughter, 13 year old Grace Elliott, and her grandson, Trenton Buzard, in the 2005 Chevrolet Cobalt on a

4.

Pennsylvania roadway. It was a clear and dry night on a straight section of an east/west 2-lane roadway. As Esther Mathews was travelling she suddenly perceived a vehicle, driven by Dennis Bussell, deceased, approaching her lane of travel. She had time to perceive the danger and react by attempting an evasive maneuver, however, her Chevrolet Cobalt suddenly and without warning stalled leaving her ability to steer or otherwise control the vehicle severely diminished.

9.     Unbeknownst to Esther Mathews, her 2005 Chevrolet Cobalt had a serious and unreasonably dangerous defect with the ignition switch. Specifically, the ignition switch had the ability to change from the "run" position to the "accessory" position thereby causing the engine to lose power with a resultant loss of power to the steering, brakes, air bags, and other essential safety functions of the car. This defective condition directly resulted in a loss of power exactly at the time and place where Esther Mathews most needed these essential functions to avoid this collision and/or lessen the impact of the collision.

10.     The resulting collision resulted in a right offset impact configuration as evidenced by the following overview photograph of the Cobalt's damage:



5.

**B.    The Airbags On Plaintiff's Vehicle Did Not Deploy Because Of A Defective Condition That GM Knew Existed**

11.    Plaintiff's vehicle was one of the vehicles subject to a recent recall.

12.    The problem with Plaintiff's vehicle was not unique.  To the contrary, it is a problem that resulted in a recall notice being issued by New GM for certain of its vehicles, including Esther Mathews' 2005 Chevrolet Cobalt.  Initially, on February 7, 2014, New GM filed a Defect Notice to recall 2005-2007 Model Year Chevrolet Cobalt and 2007 Pontiac G5 vehicles. The Defect Notice stated that the ignition switch torque performance in these vehicles might not meet specifications, resulting in the non-deployment of airbags in crash events. The notice called for the recall of approximately six hundred thousand vehicles.

13.    Seventeen days later, on February 24, 2014, New GM issued a notice to the National Highway Traffic Safety Administration ("NHTSA"), expanding the recall to include 2003-2007 Saturn Ions, 2006-2007 Chevrolet HHRs, 2006-2007 Pontiac Solstices, and 2007 Saturn Skys, bringing the number of vehicles affected by the recall to 1,367,146. This NHTSA notice furnished information *dating back 10 years*, and dealt directly with New GM's recall obligations and product warranties, which have been known to New GM since July 2009. The notice dated February 24, 2014, provided a chronology that, at a minimum, demonstrates GM's knowledge, actions, inaction, and conscious disregard related to the ignition switch.

14.    On March 28, 2014, the recall was expanded to include the following vehicles: 2008-2010 Pontiac Solstices; 2008-2010 Pontiac G5s; 2008-2010 Saturn Skys; 2008-2010 Chevrolet Cobalts; and 2008-2011 Chevrolet HHRs (collectively, the "defective vehicles").

15.    Throughout 2005, Old GM received similar field reports of vehicles losing engine power when the key moved out of the "run" position. A proposal was approved to redesign the key head, but later cancelled. Instead of recalling the vehicles to replace the defective ignition

switches, Old GM issued a Service Bulletin (the "Bulletin"). The Bulletin recognized that there was a potential for the driver to inadvertently turn off the ignition due to low ignition key cylinder torque/effort.

15.     Although Old GM developed an insert for the key ring that changed it from a slot design to a hole design, to prevent the key from easily jogging the ignition switch out of the run position, the redesigned ignition switch was not installed in vehicles until the 2007 model year.

16.     The defective ignition switch has been linked to numerous crashes and fatalities.

17.     Given the vast number of instances of sudden engine power loss and non-deployment of airbags related to the defective ignition switch and New GM's discovery or knowledge of many or all of the instances beginning with its inception in July 2009, New GM should have aggressively taken remedial measures to address these defects. New GM failed to do so. In fact, this first recall was not implemented until 2014 – nearly ten years after the first instances of engine power loss.

18.     The ignition switch defect in GM vehicles has adversely affected the company's reputation as a manufacturer of safe, reliable vehicles with high resale value, as compared to vehicles made by its competitors. In the wake of the news reports about this serious problem, GM customers and consumers generally are – as they should be – skeptical about the quality and safety of GM vehicles.

19.     In the wake of the news about the ignition defects, consumers have also become rightfully skeptical about whether New GM is coming forth with truthful information about the sudden loss of power defect. Likewise, GM customers, including Plaintiff, and the general public are left to wonder whether safety concerns about GM vehicles are limited to this particular problem.

Case ID: 140500377

**C.** **The Recall Notice is Inaccurate Because Plaintiff Only Had One Key in the Ignition Switch at the Time of the Collision, and Her Vehicle Still Stalled.**

20.     In late March 2014, GM customers received a letter from New GM advising them that their vehicles were being recalled. In that letter, New GM amazingly advised GM Automobile owners that they should take all the weight off of their key chain and, by so doing, their car would not stall.

21.     New GM's statements in the recall notice were not accurate, were not sufficient and not reasonable.

**D.** **The Damage Done....**

22.     As a direct and proximate result of the collision and the negligent conduct of Defendants, TRENTON BUZARD suffered severe bodily injuries including a cervical spinal cord injury and brain hemorrhages, and resulting paralysis. The injuries are permanent in nature.



23.     The injuries have had a serious effect on the Trenton's health and well-being. Some of the effects are permanent and will abide with Trenton for a long time into the future, if not for his entire life. These specific injuries and their ill effects have, in turn, caused Trenton physical and mental condition to deteriorate generally and the specific injuries and ill effects alleged have caused and will, in all reasonable probability, cause Trenton to suffer consequences and ill effects of this deterioration throughout his body for a long time in the future, if not for the

8.

Case ID: 140500377

balance of his natural life. As a further result of the nature and consequences of his injuries, the Trenton suffered great physical and mental pain, suffering and mental anguish and in all reasonable probability, will continue to suffer in this manner for a long time into the future, if not for the balance of his natural life.

    24.    Additionally, as a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiffs were caused to incur the following damages:

    a.  Reasonable medical care and expenses in the past. Plaintiffs incurred these expenses for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in which county they were incurred;

    b.  Reasonable and necessary medical care and expenses, which will, in all reasonable probability be incurred in the future;

    c.  Physical pain and suffering in the past;

    d.  Physical pain and suffering, which will, in all reasonable probability be suffered in the future;

    e.  Physical impairment in the past;

    f.  Physical impairment, which will, in all reasonable probability, be suffered in the future;

    g.  Lost wages in the past, present and future;

    h.  Loss of earning capacity, which will, in all reasonable probability, be incurred in the future;

    i.  Mental anguish in the past;

    j.  Mental anguish which will, in all reasonable probability be suffered in the future;

Case ID: 140500377

k. Disfigurement;

l. Loss of Parental Consortium; and,

m. Other special damages.

## IV.
## CLAIMS AGAINST GM DEFENDANTS

### COUNT I – Negligence, Gross Negligence, Recklessness

25.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

26.     Plaintiffs hereby assert a cause of action for negligence strictly and solely against "New GM."

27.     Each and every act of negligence asserted herein by the Plaintiff is asserted against the New GM and the GM Defendants, only, and not the Old GM.

28.     The GM Defendants owed Plaintiffs a duty to design, manufacture, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as Plaintiffs.

29.     The GM Defendants owed Plaintiffs a duty to detect known safety defects in GM vehicles.

30.     The GM Defendants owed Plaintiffs a duty, once it discovered the safety defects, such as the ignition switch defect, to provide thorough notice of the defect, including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

31.     The GM Defendants owed Plaintiffs a duty, once it discovered the ignition switch defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

10.

32.     The GM Defendants knew that their customers, such as Plaintiffs, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

33.     The GM Defendants efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of Plaintiffs and other drivers of GM vehicles. New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, GM had a responsibility to Plaintiffs and other drivers to take the reasonable measures listed above.

34.     Between July 10, 2009, and March 2014, the GM Defendants breached their duties to Plaintiffs by failing to provide appropriate notice of and repair procedures for the ignition switch defect in Plaintiff's vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

35.     It was foreseeable that if the GM Defendants did not provide appropriate notice and repair procedure for the defect, that Plaintiffs and other drivers would be endangered.

36.     Plaintiff's injuries were reasonably foreseeable to New GM.

37.     Plaintiffs could not through the exercise of reasonable diligence have prevented the injuries caused by New GM's negligence.

**WHEREFORE**, plaintiff demands damages, including punitive damages, against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT II - Civil Conspiracy Against The GM Defendants

38.     Plaintiff re-alleges as if fully set forth each and every allegation set forth above.

11.

Case ID: 140500377

39.     The GM Defendants and the New GM were involved in a civil conspiracy, as two or more persons whose goal was to accomplish a cover up of the defective ignition switch at the New GM. The cover up was for the purpose of an unlawful act, to wit, the defective condition which proximately caused damage to Plaintiffs.

**WHEREFORE**, plaintiff demands damages against defendants, including punitive damages, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT III - Fraud by Non Disclosure

40.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

41.     The Plaintiffs hereby assert a cause of action for fraud by non-disclosure strictly and solely against New GM. That is, each and every act constituting fraud by non-disclosure asserted herein by the Plaintiff are asserted against the New GM only and not the Old GM.

42.     As set forth above, from July 2009 to the present, New GM intentionally concealed or failed to disclose material facts from the Plaintiff, the public, and NHTSA.

43.     As early as 2001, during pre-production development of the Ion, Old GM became aware of issues relating to ignition switch "passlock" system. The 2001 report stated the problem included a "low detent plunger force" in the ignition switch.

44.     In 2003, before the launch of the 2005 Cobalt, Old GM became aware of incidents wherein the vehicle engine would suddenly lose power in the event the key moved out of the "run" position when the driver inadvertently contacted the key or steering column. An investigation was opened and, after consideration of lead-time required and the cost and effectiveness of potential solutions, the investigation was closed with no action taken.

12.

45.     New GM had a duty to disclose the facts to the Plaintiffs and New GM knew: (1) that Esther Mathews and Plaintiffs were ignorant of the material facts that New GM did not disclose and/or intentionally concealed; and (2) the plaintiff did not have an equal opportunity to discover the material facts that GM did not disclose and/or intentionally concealed.

46.     By failing to disclose these material facts, New GM intended to induce Plaintiffs to take some action or refrain from acting.

47.     Plaintiffs relied on New GM's non-disclosure and Trenton Buzard was injured as a result of acting without knowledge of the undisclosed facts.

**WHEREFORE**, plaintiff demands damages, including punitive damages, against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT IV – Strict Liability

48.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

49.     New GM, at all times relevant to this action, was engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the subject automobile.

50.     The subject automobile was expected to and did reach users and consumers without substantial change in the condition in which it was sold.

51.     The subject automobile was in a defective condition creating risk of harm to a user or a consumer, plaintiffs.

52.     The defects set forth herein caused Plaintiffs' injuries.

53.     These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject

13.

automobile in a defective condition for which it is strictly liable to the plaintiffs pursuant to Restatement (Second) of Torts § 402A.

54.    These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject automobile without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the plaintiffs.

**WHEREFORE**, plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT V – Breach of Warranty

55.    Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

56.    In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject automobile, New GM expressly warranted that the product was safe for its intended and foreseeable uses and made other express warranties concerning the quality and characteristics of the product.

57.    In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject automobile, New GM impliedly warranted that it was of merchantable quality, was fit and safe for the ordinary and particular purpose for which it was sold, and was free of all defects.

58.    The aforesaid express and implied warranties were breached by New GM in that the automobile constituted a serious danger to the operator and others, was not safe for its intended or foreseeable uses, was not of merchantable quality, was not fit and safe for the

14.

ordinary purposes for which it was sold, and was not free from all defects.

59.    Plaintiffs suffered the injuries and damages described herein as a direct and proximate result of the acts and/or omissions of New GM.

**WHEREFORE**, plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### V.
### CLAIM AGAINST ELLIS MOTORS, INC.

### COUNT VI - NEGLIGENCE

60.    Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

61.    Throughout the relevant time period, Ellis Motors, Inc. knew that the subject vehicle was defective in that these vehicles had an unreasonably dangerous propensity to unexpectedly shut off, powering down their cars' engines, and thereby injuring the user of these vehicles and others, including Plaintiffs.

62.    Ellis Motors, Inc. was under a duty to disclose and warn of the defective nature of the subject vehicle.

63.    Plaintiffs suffered the injuries and damages described herein as a direct and proximate result of the acts and/or omissions of Ellis set forth above.

**WHEREFORE**, plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT VII – Strict Liability

64.    Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

15.

65.    Ellis at all times relevant to this action was engaged in the, distribution, sale, and or servicing of automobiles and sold the subject automobile.

66.    The subject automobile was expected to and did reach users and consumers, including Plaintiffs, without substantial change in the condition in which they were sold.

67.    The subject automobile was in a defective condition creating risk of harm to a user or a consumer, including Plaintiffs.

68.    The defects set forth herein caused Plaintiffs' injuries.

69.    Plaintiffs' injuries and losses were caused by Ellis' inspecting, marketing, distributing, selling, and/or supplying the automobile in a defective condition for which Ellis is strictly liable to the Plaintiffs pursuant to Restatement (Second) of Torts § 402A.

70.    Plaintiffs' injuries and losses were caused by Ellis' inspecting, marketing, distributing, selling and/or supplying the automobile without proper and adequate warnings, instructions, and/or guidelines for which Ellis is strictly liable to the plaintiff.

71.    Plaintiffs suffered the injuries and damages described herein as a direct and proximate result of the acts and/or omissions of Ellis.

**WHEREFORE**, plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT VIII – Breach of Warranty

72.    Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

73.    Ellis breached express and implied warranties to plaintiffs.

**WHEREFORE**, Plaintiffs demand damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing

16.

Case ID: 140500377

arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

**THOMAS J. HENRY – INJURY ATTORNEYS**

By: _____

MICHAEL E. HENRY
Attorney I.D. No. 315091
mhenry@tjhlaw.com
521 Starr Street
Corpus Christi, Texas 78401
Attorneys for Plaintiffs

-and-

**HILLIARD MUNOZ GONZALES LLP**

ROBERT C. HILLIARD (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 09677700
bobh@hmglawfirm.com
RUDY GONZALES, JR. (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 08121700
rudyg@hmglawfirm.com
CATHERINE D. TOBIN (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 24013642
catherine@hmglawfirm.com
MARION REILLY (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 24079195
marion@hmglawfirm.com
719 S. Shoreline Boulevard,
Suite 500
Corpus Christi, TX 78401

**ROSS FELLER CASEY, LLP**

By: */s/ Robert Ross, Esquire*
ROBERT ROSS, ESQUIRE
JOEL FELLER, ESQUIRE
MATTHEW CASEY, ESQUIRE
ROBERTA GOLDEN, ESQUIRE
One Liberty Place, Suite 3450
1650 Market Street

1.

## VERIFICATION

I, Michael E. Henry, Esquire, hereby verify that I am authorized to make this verification and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. This verification is made subject to the penalties of 18 Pa.C.S.§ 4904 relating to unsworn falsification to authorities.

Michael E. Henry, Esquire

3.

Case ID: 140500377

2014 MAY 12  PM 1:55

DAUPHIN COUNTY
SHERIFF'S OFFIC
HARRISBURG, PA 17

ROBERT and MARIE BUZARD,
individually and as next frients to
TRENTON BUZARD

                 Plaintiff(s)

                v.

GENERAL MOTORS, LLC and
ELLIS MOTORS, INC.

                 Defendant(s)

COURT OF COMMON PLEAS
Filed and Attested by
PROTHONOTARY
02 JUN 2014 04:14 pm
M. RUSSELL 2014

Number 00377

## ORDER

    AND NOW, this ___ day of ____, 2014, upon consideration of the Preliminary

Objections of Defendant General Motors, LLC it is hereby Ordered that Plaintiffs' Complaint is

dismissed.

                       BY THE COURT:

                                               J.

Case ID: 140500377
Control No.: 14060259

NOTICE TO PLEAD
TO: Plaintiff
You are hereby notified to file a written response to the
enclosed Preliminary Objections within twenty (20) days
from service hereof or a judgment may be entered
against you.

*s/William J. Ricci, Esquire*
William J. Ricci, Esquire

**RICCI TYRRELL JOHNSON & GREY**
BY: **William J. Ricci, Esquire**
IDENTIFICATION NO. 27708                          ATTORNEY FOR  Defendant, General Motors, LLC
**EIGHT PENN CENTER**
1628 JOHN F. KENNEDY BLVD SUITE 2000
PHILADELPHIA, PA 19103
(215) 320-3260

ROBERT and MARIE BUZARD,                                  *COURT OF COMMON PLEAS*
individually and as next frients to                                          *DIVISION*
TRENTON BUZARD
                                          Plaintiff(s)                  MAY *TERM*, 2014

                                                                         Number  00377
                                          v.
GENERAL MOTORS, LLC and
ELLIS MOTORS, INC.

                                          Defendant(s)

PRELIMINARY OBJECTIONS OF DEENDANT
UNDERLINE GENERAL MOTORS, LLC

        Defendant,  General  Motors,  LLC  ("GM")  brings  these  preliminary  objections  to

plaintiffs' Complaint.  In support of its preliminary objections, defendant avers:

### PROCEDURAL HISTORY

        1.        Plaintiffs' action was commenced by a civil action Complaint filed on May 6,

2014.  A copy of the Complaint is attached as Exhibit "A."

        2.        GM is a Delaware limited liability company established in July, 2009.  Complaint

¶¶2, 17.

Case ID: 140500377
Control No.: 14060259

3.     Plaintiffs' Complaint was served on GM's registered agent for receipt of service of process in Harrisburg, Pennsylvania on May 13, 2014.  Docket entry, May 20, 2014.

4.     Ellis Motors, Inc., is alleged to be a domestic corporation located at 6630 Oakland Street, Philadelphia, Pennsylvania and is the only other defendant in the action.  No certificate of service has been filed of record attesting to service on Ellis Motors.

5.     These preliminary objections are timely filed within twenty (20) days of service of plaintiffs' Complaint on GM.

**PLAINTIFFS' ALLEGATIONS**

6.     Robert and Marie Buzard, who list their residence address as 199 Allison Street, New Bethlehem, Clarion County, Pennsylvania commenced this action on behalf of their son, Trenton Buzard, a minor.

7.     Trenton Buzard was an occupant of a 2005 Chevrolet Cobalt operated by his great-grandmother, Esther Mathews, and involved in a two-vehicle collision on April 2, 2009. Complaint, ¶8.

8.     The only other occupant of the Cobalt at the time of the accident was 13 year-old Grace Elliott. Complaint, ¶8.

9.     The accident occurred on a two-lane east-west road after dark on a straight section of the road. Complaint, ¶8. The location of the accident has not been alleged. *Id.* ¶8. A vehicle approaching from the opposite direction and driven by Dennis Bussel intruded into the travel lane in which Ms. Mathews' vehicle was being operated. Complaint, ¶8.

10.    Ms. Mathews and Mr. Bussell are deceased. Complaint, ¶¶7, 8.

11.    The resulting collision resulted in a frontal impact to both vehicles. Complaint, ¶10.

Case ID: 140500377
Control No.: 14060259

12.     Plaintiffs allege the 2005 Chevrolet Cobalt was manufactured in November of 2004 and purchased new by Esther Matthews from Ellis Motors, Inc.  Complaint, ¶7.

13.     GM did not exist at the time plaintiffs allege Ms. Mathews purchased the vehicle. Complaint, ¶¶2, 7, 17.

14.     GM did not exist as of the date of accident - April 2, 2009.  Complaint, ¶2, 8, 17.

15.     The Complaint alleges that Ms. Matthews had time to perceive the danger of the on-coming vehicle operated by Mr. Bussel and react by attempting an evasive maneuver but was prevented from doing so because her car suddenly and without warning stalled leaving her ability to steer or otherwise control the vehicle severely diminished.  Complaint, ¶8.

16.     The Complaint alleges the vehicle stalled because of a defective ignition switch. Complaint, ¶9.

### COUNT I – DEMURRER TO ALL COUNTS OF PLAINTIFFS' COMPLAINT

17.     GM incorporates here all preceding averments.

18.     The Complaint sets forth five Counts against GM: Negligence (Count I); Civil Conspiracy (Count II); Fraud by Non-Disclosure (Count III); Strict Liability (Count IV); and Breach of Warranty (Count V).

19.     If the breach of warranty count is based upon a written warranty, the Complaint does not comply with the requirement of Pennsylvania Rule of Civil Procedure 1019(i) by failing to attach a copy of the writing, or the material part thereof, or if plaintiff claims that the warranty is not accessible plaintiff has failed to allege the substance of the terms of the warranty.

20.     Plaintiffs' Complaint fails to allege sufficient facts to state a claim within any of the five counts of their Complaint for reasons common to all five theories:

        a.     GM did not exist when the allegedly defective vehicle was designed, manufactured, sold and warranted as a new vehicle;

Case ID: 140500377
Control No.: 14060259

    b.     Plaintiff alleges the vehicle at issue was a 2005 model purchased new by Esther Mathews, and by necessary inference purchased years before the accident occurred on April 2, 2009;

    c     GM did not exist prior to the date of accident -- April 2, 2009.

21.    The chronology of events recited on the face of plaintiffs' Complaint precludes plaintiffs' ability to establish a duty, breach of duty or causation under any of the legal theories pleaded.

22.    Count II, alleging a civil conspiracy, is infirm for the further reason that one of the fundamental elements of civil conspiracy is a combination of two or more persons. The Complaint alleges that all causes of action pleaded are against "New GM" and no cause of action is asserted against "Old GM." See Complaint, ¶2. Although referring in the plural to other "GM Defendants," plaintiff has not identified any entity apart from defendant GM.

WHEREFORE, GM moves under Rule 1028(a)(4) for dismissal of Counts I through V inclusive of plaintiffs' Complaint for failure to state a claim.

## COUNT II – ALTERNATIVE DEMURRER TO ALL COUNTS

23.    GM incorporates here all preceding averments.

24.    Plaintiff has alleged GM is the "corporate successor" of General Motors Corporation ("Old GM") which filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code on June 1, 2009. Complaint, ¶2.

25.    Plaintiffs' averment of successor status, standing alone, is a legal conclusion which the court should ignore.

26.    The Complaint alleges GM assumed "certain" liabilities of "Old GM" by way of a section 363 sale under Chapter 11 of the Bankruptcy Code but does not allege any facts supporting an inference that liability for the accident of April 2, 2009 is or could be found to be within the ambit of any liability assumed.

27.     Lacking factual averments which, taken as true, could support a finding of successor status or a specific assumed liability, the Complaint fails to state a claim against GM for successor or assumed liability.

WHEREFORE, GM moves alternatively for dismissal of all counts against it pursuant to Rule 1028(a)(4) for failure to state a claim because plaintiff has not sufficiently pled a claim for successor or assumed liability.

## COUNT III – MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

28.     GM incorporates here all preceding averments.

29.     The Complaint alleges that the Chevrolet Cobalt was manufactured in November 2004 and sold new to Esther Mathews.

30.     The accident at issue occurred on April 2, 2009.

31.     Taking the timeline averments of plaintiffs' Complaint as true, the claims asserted fall within the exclusive subject matter jurisdiction of the Bankruptcy Court.

WHEREFORE, defendant moves pursuant to Rule 10298(a)(1) for dismissal of this action for lack of subject matter jurisdiction.

## COUNT IV – MOTION TO STRIKE IMPERTINENT MATTER

32.     GM incorporates here all preceding averments.

33.     The Complaint includes multiple paragraphs setting forth contentions immaterial to proof of the causes of action nominally pleaded.

34.     A Complaint must formulate the issues summarizing those facts essential to support a claim, and allegations not specific to plaintiffs' own cause of action are inappropriate and have no place in a pleading.

Case ID: 140500377
Control No.: 14060259

35.     Paragraphs 18, 19 and 20 of plaintiffs' Complaint are immaterial to proof of plaintiffs' own causes of action.

36.     Paragraph 12 and the heading preceding the paragraph 11 of plaintiffs' Complaint are also immaterial.  Plaintiffs' Complaint does not allege any causal connection between a lack of "airbag" deployment and any injury allegedly sustained by the minor plaintiff.

WHEREFORE, defendant moves for an Order under Rule 1028(a)(2) striking the following paragraphs 12, 18, 19 and 20.

RESPECTFULLY SUBMITTED,

RICCI TYRRELL JOHNSON & GREY

By:     s/ William J. Ricci, Esquire
        William J. Ricci, Esquire
        Attorney for Defendant,
        General Motors, LLC

Dated:  June 2, 2014

# EXHIBIT "A"

Case ID: 140500377
Control No.: 14060259

**ROSS FELLER CASEY, LLP**
By:    ROBERT ROSS, ESQUIRE
          JOEL FELLER, ESQUIRE
          MATTHEW CASEY, ESQUIRE
          ROBERTA GOLDEN, ESQUIRE
I.D. NOS: 47152/68873/84443/52901
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Attorneys for Plaintiff

*Filed and Attested by*
*PROTHONOTARY*
*06 MAY 2014 05:04 pm*
*E. EDWARDS*

**THOMAS J. HENRY – INJURY ATTORNEYS**
By:    MICHAEL E. HENRY
I.D. NO: 315091
521 Starr St.
Corpus Christi, Texas 78401
  (361) 985-0600

Attorney for Plaintiff

| | |
|---|---|
| ROBERT AND MARIE BUZARD, individually and as next friends to TRENTON BUZARD<br>199 Allison Street<br>New Bethlehem, Pennsylvania 16242<br>*Plaintiffs* | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| v. | \_\_\_\_ TERM 2014 :<br>NO. \_\_ \_\_ |
| GENERAL MOTORS, LLC<br>c/o Corporation Service Company<br>2595 Interstate, Dr., Suite 103<br>Harrisburg, Pennsylvania 17110 | CIVIL ACTION – PRODUCT LIABILITY |
| ELLIS MOTORS, INC.,<br>6630 Oakland Street<br>Philadelphia, Pennsylvania 19149<br>*Defendants* | **JURY TRIAL DEMANDED** |

## NOTICE TO PLEAD

1.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL

ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICIOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

2.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

### CIVIL ACTION COMPLAINT

COMES NOW Plaintiffs, ROBERT AND MARIE BUZARD, individually and as parents and natural guardians of TRENTON BUZARD, a minor (hereinafter, "Plaintiffs") and files their Original Petition, Request for Jury Trial, and in support of this petition would show the Court as follows:

## I.
## PARTIES

1.      Plaintiffs, ROBERT AND MARIE BUZARD, individually and as next friends to TRENTON BUZARD are individuals residing in New Bethlehem, Clarion County, Pennsylvania.

2.      Defendant GENERAL MOTORS, LLC ("New GM") is a Delaware limited liability company. With respect to the facts alleged and claims asserted in this Petition, New GM is the corporate successor of General Motors Corporation ("Old GM"), which filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1, 2009. On July 10, 2009, New GM acquired substantially all of the assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code. Plaintiff's causes of action in this lawsuit are brought against New GM, and Plaintiff does not assert any causes of action against Old GM. Although this Petition references facts against Old GM, it is for background and reference purposes only. At all times relevant to the claims in this lawsuit, New GM has been in the business of developing, manufacturing, and marketing cars throughout the State of Pennsylvania.  New GM has a network of authorized retailers that sells New GM vehicles and parts throughout Pennsylvania. General Motors, LLC may be served with process through its registered agent for service of process in the State of Pennsylvania, Corporation

3.

Case ID: 140500377
Control No.: 14060259

Service Company, 2595 Interstate, Dr., Suite 103, Harrisburg 17110.

3.     Defendant Ellis Motors, Inc. is a domestic corporation doing business in the state of Pennsylvania and may be served with process at 6630 Oakland Street, Philadelphia, Pennsylvania 19149.

## II.
## VENUE AND JURISDICTION

4.     This Court has jurisdiction over each Defendants because each either has its principal place of business in Pennsylvania, or does sufficient business in, or has sufficient minimum contacts with, or otherwise intentionally avails itself of the markets of the Commonwealth of Pennsylvania through its business operations in Pennsylvania.

5.     Venue is properly laid in this County pursuant to Pennsylvania Rules of Civil Procedure 1006 and 2179.

6.     The amount in controversy exceeds the local rules for amounts in controversy requiring arbitration.

## III.
## FACTS

7.     Esther Mathews (deceased Great-Grandmother of Trenton Buzard) owned a 2005 Chevrolet Cobalt, which she purchased new from Ellis Motors, Inc.  Esther Mathews purchased the 2005 Cobalt because of the vehicle's advertised quality, reliability, and safety features.  The 2005 Chevrolet Cobalt, Vehicle Identification Number (VIN):1G1AL52F857 (production sequence deleted), was manufactured in November 2004 and was purchased new by Esther Mathews.

8.     On April 2, 2009, Esther Mathews was driving her granddaughter, 13 year old Grace Elliott, and her grandson, Trenton Buzard, in the 2005 Chevrolet Cobalt on a

4.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

Pennsylvania roadway. It was a clear and dry night on a straight section of an east/west 2-lane roadway. As Esther Mathews was travelling she suddenly perceived a vehicle, driven by Dennis Bussell, deceased, approaching her lane of travel. She had time to perceive the danger and react by attempting an evasive maneuver, however, her Chevrolet Cobalt suddenly and without warning stalled leaving her ability to steer or otherwise control the vehicle severely diminished.

9.     Unbeknownst to Esther Mathews, her 2005 Chevrolet Cobalt had a serious and unreasonably dangerous defect with the ignition switch. Specifically, the ignition switch had the ability to change from the "run" position to the "accessory" position thereby causing the engine to lose power with a resultant loss of power to the steering, brakes, air bags, and other essential safety functions of the car. This defective condition directly resulted in a loss of power exactly at the time and place where Esther Mathews most needed these essential functions to avoid this collision and/or lessen the impact of the collision.

10.     The resulting collision resulted in a right offset impact configuration as evidenced by the following overview photograph of the Cobalt's damage:



5.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

**B.    The Airbags On Plaintiff's Vehicle Did Not Deploy Because Of A Defective Condition That GM Knew Existed**

11.    Plaintiff's vehicle was one of the vehicles subject to a recent recall.

12.    The problem with Plaintiff's vehicle was not unique.  To the contrary, it is a problem that resulted in a recall notice being issued by New GM for certain of its vehicles, including Esther Mathews' 2005 Chevrolet Cobalt.  Initially, on February 7, 2014, New GM filed a Defect Notice to recall 2005-2007 Model Year Chevrolet Cobalt and 2007 Pontiac G5 vehicles. The Defect Notice stated that the ignition switch torque performance in these vehicles might not meet specifications, resulting in the non-deployment of airbags in crash events. The notice called for the recall of approximately six hundred thousand vehicles.

13.    Seventeen days later, on February 24, 2014, New GM issued a notice to the National Highway Traffic Safety Administration ("NHTSA"), expanding the recall to include 2003-2007 Saturn Ions, 2006-2007 Chevrolet HHRs, 2006-2007 Pontiac Solstices, and 2007 Saturn Skys, bringing the number of vehicles affected by the recall to 1,367,146. This NHTSA notice furnished information *dating back 10 years*, and dealt directly with New GM's recall obligations and product warranties, which have been known to New GM since July 2009. The notice dated February 24, 2014, provided a chronology that, at a minimum, demonstrates GM's knowledge, actions, inaction, and conscious disregard related to the ignition switch.

14.    On March 28, 2014, the recall was expanded to include the following vehicles: 2008-2010 Pontiac Solstices; 2008-2010 Pontiac G5s; 2008-2010 Saturn Skys; 2008-2010 Chevrolet Cobalts; and 2008-2011 Chevrolet HHRs (collectively, the "defective vehicles").

15.    Throughout 2005, Old GM received similar field reports of vehicles losing engine power when the key moved out of the "run" position. A proposal was approved to redesign the key head, but later cancelled. Instead of recalling the vehicles to replace the defective ignition

6.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

switches, Old GM issued a Service Bulletin (the "Bulletin"). The Bulletin recognized that there was a potential for the driver to inadvertently turn off the ignition due to low ignition key cylinder torque/effort.

15.     Although Old GM developed an insert for the key ring that changed it from a slot design to a hole design, to prevent the key from easily jogging the ignition switch out of the run position, the redesigned ignition switch was not installed in vehicles until the 2007 model year.

16.     The defective ignition switch has been linked to numerous crashes and fatalities.

17.     Given the vast number of instances of sudden engine power loss and non-deployment of airbags related to the defective ignition switch and New GM's discovery or knowledge of many or all of the instances beginning with its inception in July 2009, New GM should have aggressively taken remedial measures to address these defects. New GM failed to do so. In fact, this first recall was not implemented until 2014 – nearly ten years after the first instances of engine power loss.

18.     The ignition switch defect in GM vehicles has adversely affected the company's reputation as a manufacturer of safe, reliable vehicles with high resale value, as compared to vehicles made by its competitors. In the wake of the news reports about this serious problem, GM customers and consumers generally are – as they should be - skeptical about the quality and safety of GM vehicles.

19.     In the wake of the news about the ignition defects, consumers have also become rightfully skeptical about whether New GM is coming forth with truthful information about the sudden loss of power defect. Likewise, GM customers, including Plaintiff, and the general public are left to wonder whether safety concerns about GM vehicles are limited to this particular problem.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

**C.**   **The Recall Notice is Inaccurate Because Plaintiff Only Had One Key in the Ignition Switch at the Time of the Collision, and Her Vehicle Still Stalled.**

20.    In late March 2014, GM customers received a letter from New GM advising them that their vehicles were being recalled. In that letter, New GM amazingly advised GM Automobile owners that they should take all the weight off of their key chain and, by so doing, their car would not stall.

21.    New GM's statements in the recall notice were not accurate, were not sufficient and not reasonable.

**D.**   **The Damage Done....**

22.    As a direct and proximate result of the collision and the negligent conduct of Defendants, TRENTON BUZARD suffered severe bodily injuries including a cervical spinal cord injury and brain hemorrhages, and resulting paralysis. The injuries are permanent in nature.



23.    The injuries have had a serious effect on the Trenton's health and well-being. Some of the effects are permanent and will abide with Trenton for a long time into the future, if not for his entire life. These specific injuries and their ill effects have, in turn, caused Trenton physical and mental condition to deteriorate generally and the specific injuries and ill effects alleged have caused and will, in all reasonable probability, cause Trenton to suffer consequences and ill effects of this deterioration throughout his body for a long time in the future, if not for the

8.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

balance of his natural life. As a further result of the nature and consequences of his injuries, the Trenton suffered great physical and mental pain, suffering and mental anguish and in all reasonable probability, will continue to suffer in this manner for a long time into the future, if not for the balance of his natural life.

    24.    Additionally, as a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiffs were caused to incur the following damages:

    a.    Reasonable medical care and expenses in the past. Plaintiffs incurred these expenses for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in which county they were incurred;

    b.    Reasonable and necessary medical care and expenses, which will, in all reasonable probability be incurred in the future;

    c.    Physical pain and suffering in the past;

    d.    Physical pain and suffering, which will, in all reasonable probability be suffered in the future;

    e.    Physical impairment in the past;

    f.    Physical impairment, which will, in all reasonable probability, be suffered in the future;

    g.    Lost wages in the past, present and future;

    h.    Loss of earning capacity, which will, in all reasonable probability, be incurred in the future;

    i.    Mental anguish in the past;

    j.    Mental anguish which will, in all reasonable probability be suffered in the future;

9.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

k.  Disfigurement;

l.  Loss of Parental Consortium; and,

m.  Other special damages.

## IV.
## CLAIMS AGAINST GM DEFENDANTS

### COUNT I – Negligence, Gross Negligence, Recklessness

25.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

26.     Plaintiffs hereby assert a cause of action for negligence strictly and solely against "New GM."

27.     Each and every act of negligence asserted herein by the Plaintiff is asserted against the New GM and the GM Defendants, only, and not the Old GM.

28.     The GM Defendants owed Plaintiffs a duty to design, manufacture, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as Plaintiffs.

29.     The GM Defendants owed Plaintiffs a duty to detect known safety defects in GM vehicles.

30.     The GM Defendants owed Plaintiffs a duty, once it discovered the safety defects, such as the ignition switch defect, to provide thorough notice of the defect, including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

31.     The GM Defendants owed Plaintiffs a duty, once it discovered the ignition switch defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

10.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

32.     The GM Defendants knew that their customers, such as Plaintiffs, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

33.     The GM Defendants efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of Plaintiffs and other drivers of GM vehicles. New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, GM had a responsibility to Plaintiffs and other drivers to take the reasonable measures listed above.

34.     Between July 10, 2009, and March 2014, the GM Defendants breached their duties to Plaintiffs by failing to provide appropriate notice of and repair procedures for the ignition switch defect in Plaintiff's vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

35.     It was foreseeable that if the GM Defendants did not provide appropriate notice and repair procedure for the defect, that Plaintiffs and other drivers would be endangered.

36.     Plaintiff's injuries were reasonably foreseeable to New GM.

37.     Plaintiffs could not through the exercise of reasonable diligence have prevented the injuries caused by New GM's negligence.

**WHEREFORE**, plaintiff demands damages, including punitive damages, against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT II - Civil Conspiracy Against The GM Defendants

38.     Plaintiff re-alleges as if fully set forth each and every allegation set forth above.

11.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

39.     The GM Defendants and the New GM were involved in a civil conspiracy, as two or more persons whose goal was to accomplish a cover up of the defective ignition switch at the New GM.  The cover up was for the purpose of an unlawful act, to wit, the defective condition which proximately caused damage to Plaintiffs.

**WHEREFORE**, plaintiff demands damages against defendants, including punitive damages, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT III - Fraud by Non Disclosure

40.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

41.     The Plaintiffs hereby assert a cause of action for fraud by non-disclosure strictly and solely against New GM. That is, each and every act constituting fraud by non-disclosure asserted herein by the Plaintiff are asserted against the New GM only and not the Old GM.

42.     As set forth above, from July 2009 to the present, New GM intentionally concealed or failed to disclose material facts from the Plaintiff, the public, and NHTSA.

43.     As early as 2001, during pre-production development of the Ion, Old GM became aware of issues relating to ignition switch "passlock" system. The 2001 report stated the problem included a "low detent plunger force" in the ignition switch.

44.     In 2003, before the launch of the 2005 Cobalt, Old GM became aware of incidents wherein the vehicle engine would suddenly lose power in the event the key moved out of the "run" position when the driver inadvertently contacted the key or steering column. An investigation was opened and, after consideration of lead-time required and the cost and effectiveness of potential solutions, the investigation was closed with no action taken.

12.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

45.     New GM had a duty to disclose the facts to the Plaintiffs and New GM knew: (1) that Esther Mathews and Plaintiffs were ignorant of the material facts that New GM did not disclose and/or intentionally concealed; and (2) the plaintiff did not have an equal opportunity to discover the material facts that GM did not disclose and/or intentionally concealed.

46.     By failing to disclose these material facts, New GM intended to induce Plaintiffs to take some action or refrain from acting.

47.     Plaintiffs relied on New GM's non-disclosure and Trenton Buzard was injured as a result of acting without knowledge of the undisclosed facts.

**WHEREFORE,** plaintiff demands damages, including punitive damages, against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

## COUNT IV – Strict Liability

48.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

49.     New GM, at all times relevant to this action, was engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the subject automobile.

50.     The subject automobile was expected to and did reach users and consumers without substantial change in the condition in which it was sold.

51.     The subject automobile was in a defective condition creating risk of harm to a user or a consumer, plaintiffs.

52.     The defects set forth herein caused Plaintiffs' injuries.

53.     These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject

13.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

automobile in a defective condition for which it is strictly liable to the plaintiffs pursuant to Restatement (Second) of Torts § 402A.

54.     These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject automobile without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the plaintiffs.

**WHEREFORE,** plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT V – <u>Breach of Warranty</u>

55.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

56.     In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject automobile, New GM expressly warranted that the product was safe for its intended and foreseeable uses and made other express warranties concerning the quality and characteristics of the product.

57.     In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the subject automobile, New GM impliedly warranted that it was of merchantable quality, was fit and safe for the ordinary and particular purpose for which it was sold, and was free of all defects.

58.     The aforesaid express and implied warranties were breached by New GM in that the automobile constituted a serious danger to the operator and others, was not safe for its intended or foreseeable uses, was not of merchantable quality, was not fit and safe for the

14.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

ordinary purposes for which it was sold, and was not free from all defects.

59.    Plaintiffs suffered the injuries and damages described herein as a direct and proximate result of the acts and/or omissions of New GM.

**WHEREFORE**, plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

## V.
## CLAIM AGAINST ELLIS MOTORS, INC.

### COUNT VI - NEGLIGENCE

60.    Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

61.    Throughout the relevant time period, Ellis Motors, Inc. knew that the subject vehicle was defective in that these vehicles had an unreasonably dangerous propensity to unexpectedly shut off, powering down their cars' engines, and thereby injuring the user of these vehicles and others, including Plaintiffs.

62.    Ellis Motors, Inc. was under a duty to disclose and warn of the defective nature of the subject vehicle.

63.    Plaintiffs suffered the injuries and damages described herein as a direct and proximate result of the acts and/or omissions of Ellis set forth above.

**WHEREFORE**, plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT VII – Strict Liability

64.    Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

15.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

65.     Ellis at all times relevant to this action was engaged in the, distribution, sale, and or servicing of automobiles and sold the subject automobile.

66.     The subject automobile was expected to and did reach users and consumers, including Plaintiffs, without substantial change in the condition in which they were sold.

67.     The subject automobile was in a defective condition creating risk of harm to a user or a consumer, including Plaintiffs.

68.     The defects set forth herein caused Plaintiffs' injuries.

69.     Plaintiffs' injuries and losses were caused by Ellis' inspecting, marketing, distributing, selling, and/or supplying the automobile in a defective condition for which Ellis is strictly liable to the Plaintiffs pursuant to Restatement (Second) of Torts § 402A.

70.     Plaintiffs' injuries and losses were caused by Ellis' inspecting, marketing, distributing, selling and/or supplying the automobile without proper and adequate warnings, instructions, and/or guidelines for which Ellis is strictly liable to the plaintiff.

71.     Plaintiffs suffered the injuries and damages described herein as a direct and proximate result of the acts and/or omissions of Ellis.

**WHEREFORE**, plaintiff demands damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

### COUNT VIII – Breach of Warranty

72.     Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

73.     Ellis breached express and implied warranties to plaintiffs.

**WHEREFORE**, Plaintiffs demand damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of prevailing

16.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

arbitration limits, exclusive of pre-judgment interest, post-judgment interest, and costs.

THOMAS J. HENRY – INJURY
ATTORNEYS

By: _____

MICHAEL E. HENRY
Attorney I.D. No. 315091
mhenry@tjhlaw.com
521 Starr Street
Corpus Christi, Texas 78401
Attorneys for Plaintiffs

-and-

**HILLIARD MUNOZ GONZALES LLP**

ROBERT C. HILLIARD (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 09677700
bobh@hmglawfirm.com
RUDY GONZALES, JR. (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 08121700
rudyg@hmglawfirm.com
CATHERINE D. TOBIN (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 24013642
catherine@hmglawfirm.com
MARION REILLY (*pending Court's approval of Motion for Pro Hac Vice*)
Texas State Bar No. 24079195
marion@hmglawfirm.com
719 S. Shoreline Boulevard,
Suite 500
Corpus Christi, TX 78401

**ROSS FELLER CASEY, LLP**

By: */s/ Robert Ross, Esquire*
ROBERT ROSS, ESQUIRE
JOEL FELLER, ESQUIRE
MATTHEW CASEY, ESQUIRE
ROBERTA GOLDEN, ESQUIRE
One Liberty Place, Suite 3450
1650 Market Street

1.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

## VERIFICATION

I, Michael E. Henry, Esquire, hereby verify that I am authorized to make this verification and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.  This verification is made subject to the penalties of 18 Pa.C.S.§ 4904 relating to unsworn falsification to authorities.

_____
Michael E. Henry, Esquire

3.

Case ID: 140500377

Case ID: 140500377
Control No.: 14060259

MAY 12  PM 1:55

COURT
SHERIFF'S OFFICE
BURG, PA

Case ID: 140500377
Control No.: 14060259

## CERTIFICATE OF SERVICE

I hereby certify that I will serve a true and correct copy of the Preliminary Objections of

General Motors, LLC in accordance with Pa.R.C.P. 440 on all parties not served electronically.

All other parties will be electronically served by the court in accordance with Pa.R.C.P. 205.4(g).

Robert Ross, Esquire
Joel Feller, Esquire
Matthew Casey, Esquire
Roberta Golden, Esquire
Ross Feller Casey, LLP
One Liberty Place, Suite 3450
1650 Market Street, Suite 3450
Philadelphia, PA  19103
*Attorneys for Plaintiffs*

Michael E. Henry, Esquire
Thomas J. Henry – Injury Attorneys
521 Starr Street
Corpus Christi, TX  78401
*Attorneys for Plaintiffs*

Ellis Motors, Inc.
6630 Oakland Street
Philadelphia, PA  19149

Robert C. Hilliard, Esquire
Rudy Gonzales, Jr., Esquire
Catherine D. Tobin, Esquire
Marion Reilly, Esquire
Hillard Munoz Gonzales LLP
719 S. Shoreline Boulevard
Suite 55
Corpus Christi, TX  78401

RICCI TYRRELL JOHNSON & GREY

By: ___s/William J. Ricci, Esquire___
       William J. Ricci, Esquire

Dated:  June 2, 2014

**RICCI TYRRELL JOHNSON & GREY**
**BY: William J. Ricci, Esquire**
IDENTIFICATION NO. 27708
EIGHT PENN CENTER
1628 JOHN F. KENNEDY BLVD SUITE 2000
PHILADELPHIA, PA 19103
(215) 320-3260

ATTORNEY FOR Defendant, General Motors, LLC

Filed and Attested by
PROTHONOTARY
02 JUN 2014 04:14 pm
S. MASCUILLI

| | |
|---|---|
| ROBERT and MARIE BUZARD, individually and as next friends to TRENTON BUZARD <br><br> Plaintiff(s) <br><br> v. <br><br> GENERAL MOTORS, LLC and ELLIS MOTORS, INC. <br><br> Defendant(s) | *COURT OF COMMON PLEAS DIVISION* <br><br> MAY *TERM*, 2014 <br><br> Number 00377 |

### MEMORANDUM OF LAW IN SUPPORT OF THE PRELIMINARY OBJECTIONS OF DEFENDANT, GENERAL MOTORS, LLC

### I.   Matters Before the Court

Plaintiffs' Complaint alleges multiple causes of action on behalf of their son, Trenton Buzard, arising out of a head-on collision between two cars on a two-lane east-west road that occurred on April 2, 2009.  The Complaint alleges the minor plaintiff was an occupant of a 2005 Chevrolet Cobalt purchased new from Ellis Motors, Inc. by his great-grandmother, Esther Mathews,  and driven by her at the time of the accident. The drivers of both vehicles involved are deceased.[1]

Defendant General Motors, LLC ("GM") has filed timely preliminary objections in the nature of motions to dismiss for failure state a claim, for lack of subject matter jurisdiction and to strike impertinent matter.[2]

---

[1] The Complaint does not allege when they died or whether either succumbed to accident related injury.
[2] No affidavit of service has been filed as to Ellis Motors.

Case ID: 140500377
Control No.: 14060259

II.   **Statement of Questions Involved**

    1.   Should Counts I through V inclusive be dismissed for failure to state a claim pursuant to Rule 1028(a)(4)?

        *Answer*: Yes. GM did not exist prior to April 2, 2009, was not a seller of the vehicle at issue, could not have made any representations about the vehicle before the accident, and could not have made any express or implied warranty at the time of sale.

    2.   Alternatively, should Count II be dismissed pursuant to Rule 1028(a)(4) for failure to state a claim for successor or assumed liability?

        *Answer*:  Yes. The Complaint does not plead facts which state a prima facie case that GM is liable as a successor to General Motors Corporation ("Old GM") or that GM assumed any liability inclusive of a product liability claim involving a 2005 model vehicle involved in an accident before GM existed.

    3.   Should the Complaint be dismissed for lack of subject matter jurisdiction pursuant to Rule 1028(a)(1)?

        *Answer*: Yes. Claims involving vehicles sold by "Old GM" and involved in accidents that took place prior to July 2009 are within the exclusive jurisdiction of the Bankruptcy Court.

    4.   Should some paragraphs of the Complaint be dismissed as impertinent matter pursuant to Rule 1028(a)(2)?

        *Answer*: Yes. Paragraphs 12, 18, 19 and 20 are unrelated to plaintiffs' nominal causes of action and should be stricken.

Case ID: 140500377
Control No.: 14060259

III.   **Facts**

*Procedural History.* Plaintiffs' Complaint was filed on May 6, 2014. GM was served on May 13, 2014 and its preliminary objections have been timely filed.

*Plaintiffs' Factual Allegations.* The Complaint alleges five counts against GM: Negligence (Count I), Civil Conspiracy (Count II), Fraud by Non-Disclosures (Count III), Strict Liability (Count IV), and Breach of Warranty (Count V).

Robert and Marie Buzard bring this action as parents and natural guardians of Trenton Buzard, their son.   The Buzards list their residence address as 199 Allison Street, New Bethlehem, Clarion County, Pennsylania. Complaint, ¶1.  Trenton Buzard was an occupant of a 2005 Chevrolet Cobalt operated by his great-grandmother, Esther Mathews, and involved in a two-vehicle collision on April 2, 2009.   Complaint, ¶8.   The only other occupant of Ms. Mathews' vehicle at the time of the accident was 13 year-old Grace Elliott.  Complaint, ¶8. Ms. Mathews is deceased. Complaint, ¶7.

The accident is described as occurring on a two-lane east-west road after dark on a straight section of the road.  Complaint, ¶8.  The location of the accident has not been alleged. Complaint, ¶8.  A vehicle approaching from the opposite direction and driven by Dennis Bussel, deceased, apparently intruded into the travel lane in which the Cobalt was being operated. Complaint, ¶8. The resulting collision resulted in a frontal impact to both vehicles.  Complaint, ¶10.

Plaintiffs allege the 2005 Chevrolet Cobalt was manufactured in November of 2004 and purchased new by Esther Mathews from Ellis Motors, Inc.  Complaint, ¶7.  GM did not exist at the time plaintiffs allege Ms. Mathews purchased her 2005 Cobalt. Complaint, ¶¶2, 7, 17.  The

Case ID: 140500377
Control No.: 14060259

Complaint also acknowledges GM did not yet exist as of the date of accident.  Complaint, ¶¶2, 8, 17.

The Complaint alleges Ms. Mathews had time to perceive the danger of the on-coming vehicle operated by Mr. Bussell and react by attempting an evasive maneuver but was prevented from doing so because her vehicle suddenly and without warning stalled leaving her ability to steer or otherwise control the vehicle severely diminished.  Complaint, ¶8.  Finally, the Complaint alleges the Cobalt stalled because of a defective ignition switch.  Complaint, ¶9.

IV.   **Argument**

A.  Motions to Dismiss for Failure to State a Claim (Demurrers)

Counts I through V inclusive share a common dispositive flaw. By necessity they depend upon historical events that took place before GM existed. GM did not design the vehicle, did not manufacture or assemble the vehicle, and did not sell or warrant the vehicle. Neither could it have acted in any way to invite justifiable reliance prior to the accident, or conspire with others prior to the date of the accident. As alleged the facts set forth in the Complaint do not just fail, even taken as true, to support the existence of duty, breach and causation; they affirmatively rebut fundamental elements of each cause of action. With respect to Count II, there is an added basis for dismissal. The multiple "GM Defendants" with which defendant is supposed to have conspired before the accident are, as a threshold matter, not identified and their conduct supporting a "conspiracy" is not described.

A product liability claim whether based in strict tort liability (Count IV here) or negligence (Count I) or breach of warranty (Count V), presupposes the defendant was a seller of the product. *Kimco Development Corp. v. Michael D's Carpet Outlets*, 637 A.2d 603, 606 (Pa.

4

Case ID: 140500377
Control No.: 14060259

1993); *Musser v. Vilsmeier Auction Co.*, 562 A.2d 279,  282 (Pa. Super. 1989); 13 Pa.C.S.A. §§2313, 2314. The element is not simply missing from the allegations in this case, it is contradicted by the Complaint. GM did not sell the vehicle.

A cause of action for fraud includes, among other things, proof the plaintiff acted in reliance on the defendant's misrepresentations. *Klemow v. Time, Inc.*, 352 A.2d 12, 16 (Pa. 1976). Even if one were to assume a representation to the purchaser of the vehicle could suffice to state a claim for the minor plaintiff, an assumption finding no basis in case law, the facts affirmatively pleaded show GM could not have made any such representation; it did not exist before the sale or the accident.

The elements of civil conspiracy (Count II) are: (1) a combination of two or more persons acting with common purpose to do an unlawful act, or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of a common purpose, and (3) actual legal damage. *Werner v. Werner*, 781 A.2d 188 (Pa. Super. 2001).  A corporation cannot conspire with itself, or with its officers and agents. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979). A plaintiff must allege the manner in which a conspiratorial scheme was devised and carried out. *Burnside v. Abbott Labs.*, 505 A.2d 973 (Pa. Super. 1985). Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. 1988).  And civil conspiracy cannot be predicated on a negligence claim. *Goldstein v. Philip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004). The facts alleged in the case miss the mark on every element, not least the logical impossibility of GM having conspired with anyone before the accident, and thereby have some role in causing it, for the very reason attested in the Complaint – GM did not exist before the accident.

5

Case ID: 140500377
Control No.: 14060259

To the extent that plaintiffs may seek to hold GM liable based on a nominal theory of successor liability or an assumed liability the Complaint is bereft of factual averments needed to state a claim. Complaint, ¶2. Both theories are also precluded by the Bankruptcy Court Order approving the sale of assets of "Old GM" to an entity owned by the United States Treasury. *In Re GMC*, 2009 Bankr. LEXIS 5565 (S.D.N.Y. 2009); *In Re GMC*, 407 B.R. 463, 2009 Bankr. LEXIS 1687 (S.D.N.Y. 2009); *Campbell v. Motors Liquidation Co.*, 428 B.R. 43, 2010 U.S. Dist. LEXIS 37794 (S.D.N.Y. 2010).[3]

As a matter of Pennsylvania law the stand alone description of GM as the "corporate successor of General Motors Corporation ("Old GM")" is not an averment of fact; it is a plain conclusion of law the court must disregard. *Strutz v. State Farm Mutual Ins. Co.*, 609 A.2d 569, 571 (Pa. Super. 1992), appeal denied, 615 A.2d 1313 (Pa. 1992) (ignoring an allegation of "additional insured" status under an insurance policy). The general rule is that when one company sells or transfers all of its assets to a another company the purchaser does not acquire the liabilities of the seller. *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106, 107 (Pa. Super. 1981). No verified facts have been pleaded in support of the elements of a theory of successor liability or an assumed liability. The omission is easily explained.

The Complaint references the bankruptcy of "Old GM" in paragraph (2) and is supported by a verification taken by counsel, both underscoring the necessary inference that the facts of the bankruptcy could have been pleaded if supportive of a claim of successor or assumed liability. But the bankruptcy record is not supportive.  The claim here arises from injuries sustained prior to the Chapter 11 filing on June 1, 2009 which commenced the bankruptcy proceedings for the liquidation of "Old GM." The Sale Order issued by the bankruptcy court on July 5, 2009 authorized the sale of assets free and clear of product liability claims arising from accidents

---

[3] The cases cited are attached as Appendix A to this memorandum.

Case ID: 140500377
Control No.: 14060259

before that date. *In Re GMC*, 2009 Bankr. LEXIS 5565 (S.D.N.Y. 2009); *In Re GMC*, 407 B.R. 463, 2009 Bankr. LEXIS 1687 (S.D.N.Y. 2009); *Campbell v. Motors Liquidation Co.*, 428 B.R. 43, 2010 U.S. Dist. LEXIS 37794 (S.D.N.Y. 2010). The Sale Order also enjoined any successor liability claims against GM. *Id.*   Thus, reference to the bankruptcy does not encompass facts sufficient to support the claim asserted.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Plaintiffs' references to successor status and expressly assumed liability also force consideration of Bankruptcy Court jurisdiction and defendant's preliminary objection under Rule 1028(a)(1).

The timeline set forth in the Complaint puts the model vehicle and the accident squarely within the class of product liability claims that must be pursued, if at all, within the General Motors Corporation bankruptcy and subject to the jurisdiction of the federal Bankruptcy Court. The Sale Order entered on July 5, 2009 "provided that the Bankruptcy Court retained exclusive jurisdiction to interpret, implement, and enforce the Sale Order's terms and provisions and to protect the Purchaser against any of the Retained Liabilities – i.e., those left with Old GM – or the assertion of any lien, claim, encumbrance, or other interest against the Purchased Assets." *Campbell v Motors Liquidation Co.*, *supra.*, note 5. The claims made by plaintiffs here fall within the exclusive jurisdiction of the Bankruptcy Court.

### C. Motion to Strike Impertinent Matter

To be impertinent, allegations must be immaterial or inappropriate to the proof of the plaintiff's personal cause of action. *Common Cause/Pennsylvania v. Commonwealth*, 710 A.2d

7

Case ID: 140500377
Control No.: 14060259

108, 115 (Pa.Cmwlth.1998); *Jubelirer v. Rendell*, 904 A.2d 1030 (Pa. Commw. Ct. 2006), *rev'd on other grounds by* 598 Pa. 16 (2008). "A Complaint must formulate the issues by only summarizing those facts essential to support the claim. Accordingly, where a Complaint includes allegations…not specific to this Plaintiff and/or cast a derogatory light on the [defendant], those statements are inappropriate and have no place in a pleading." *John Doe 203 v. Archdiocese of Philadelphia*, 31 Pa.D.&C.5th 83, 86 (Phila. C.P. 2013).

Multiple paragraphs of the Complaint run afoul of this basic pleading rule. Paragraph 12, and the heading that precedes it, talk about non-deployment of airbags in a vacuum. The position of the child in the Cobalt at the time of the accident is not alleged. The photograph used as part of Paragraph 22 makes clear the child should have been in a child seat in the rear occupant area. No allegation even hints at a causal link between non-deployment of an "airbag" and injury to the minor plaintiff. The "airbag" allegation stands out as completely gratuitous and unrelated to the allegation that a stalling event, immediately coincident with intrusion of Bussell's car into the Cobalt's travel lane, caused loss of operator control and prevented a crash-avoiding maneuver.

Paragraphs 18 through 20 are likewise open to challenge as "impertinent matter." Plaintiffs have no standing to speak for "GM customers" or about public perceptions generated by a product recall. None of what is alleged in these paragraphs qualifies as fact pleading appropriate to proof of a 2009 accident. Consequently, paragraphs 12, 18, 19 and 20 should be stricken from the Complaint, assuming it survives defendant's motions to dismiss.

V.   **Conclusion**

For the foregoing reasons GM submits plaintiffs' Complaint fails to state a claim and should be dismissed. In addition, the Complaint as stated shows the claims it nominally asserts need to be brought, if at all, in federal Bankruptcy Court against "Old GM." If the Court is

8

Case ID: 140500377
Control No.: 14060259

inclined to permit an amended and more specific pleading as an incremental step, at a minimum paragraphs 12, 18, 19 and 20 should be stricken.

RICCI TYRRELL JOHNSON & GREY

By:  s/ William J. Ricci, Esquire
        William J. Ricci, Esquire
        Attorney for Defendant,
        General Motors, LLC

Dated: June 2, 2014

Case ID: 140500377
Control No.: 14060259

# APPENDIX A

Case ID: 140500377
Control No.: 14060259

Caution
As of: June 2, 2014 12:34 PM EDT

# Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)

United States District Court for the Southern District of New York
April 12, 2010, Decided; April 13, 2010, Filed
09 Civ. 6818 (NRB)

**Reporter:** 428 B.R. 43; 2010 U.S. Dist. LEXIS 37794

In re MOTORS LIQUIDATION COMPANY, et al. (f/k/a General Motors Corp., et al.), Debtors. CALLAN CAMPBELL, et al., Appellants, - against - MOTORS LIQUIDATION COMPANY, et al. (f/k/a General Motors Corporation, et al.), Appellees.

**Subsequent History:** Related proceeding at *Schomaker v. GM, Inc., 2011 U.S. Dist. LEXIS 107322 (W.D. Mich., Aug. 29, 2011)*

**Prior History:** [**1] Chapter 11 NO. 09 Bk 50026 (REG).
*In re GMC, 407 B.R. 463, 2009 Bankr. LEXIS 1687 (Bankr. S.D.N.Y., 2009)*

## Core Terms

bankruptcy court, sale order, moot, free and clear, product liability, colorable, unstayed, successor liability, successor, lease, consummate, injunctive, claimant, entity, pending appeal, good faith, inequitable, jurisdictional challenge, asbestos, rewrite, enjoin, transferee liability, encumbrance, equitably, modify, liquidate, negotiate, treasury, unravel, contingent

## Case Summary

### Procedural Posture

Appellants, five products liability claimants whose contingent claims arose from injuries sustained prior to appellee debtors' Chapter 11 filing, challenged a decision of the United States Bankruptcy Court for the Southern District of New York, which authorized the sale of substantially all of the debtors' assets to a United States Treasury-sponsored purchaser pursuant to *11 U.S.C.S. § 363*.

### Overview

The claimant alleged that *§ 363(f)* did not authorize a sale free and clear of their in personam products liability claims; and that the bankruptcy court lacked subject matter jurisdiction to bar or enjoin disputes between the claimants and the purchaser based on successor liability or other theories. The court held that the issues the claimant sought to raise on appeal were statutorily moot under *§ 363(m)* because the sale order was not stayed pending appeal, and the sale transaction had since closed. The court also held that the appeal was equitably moot because the claimants had not made the requisite showing to overcome the presumption that an appeal of an unstayed, substantially consummated sale order was moot. The court noted that it could not fashion effective relief without rewriting and unraveling the integrated terms of the extensively negotiated transaction, which would be beyond the court's power; and the claimant's failure to pursue a stay with diligence had created a situation where it would be inequitable to reverse or modify the sale order as requested on the instant appeal.

### Outcome

The court affirmed the bankruptcy court's decision.

## LexisNexis® Headnotes

Bankruptcy Law > Procedural Matters > Judicial Review > Jurisdiction

*HN1* District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to *28 U.S.C.S. § 158(a)*, and may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree. *Fed. R. Bankr. P. 8013*.

Bankruptcy Law > ... > Judicial Review > Standards of Review > Clear Error Review

Bankruptcy Law > ... > Judicial Review > Standards of Review > De Novo Standard of Review

*HN2* A district court reviews the legal conclusions of the bankruptcy court de novo, and its findings of fact under the clearly erroneous standard.

Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > General Overview

Bankruptcy Law > ... > Judicial Review > Standards of Review > Abuse of Discretion

*HN3* The approval of a sale of assets under *11 U.S.C.S. § 363* is generally reviewed for abuse of discretion. A bankruptcy court abuses its discretion when it arrives at (i) a decision resting on an error of law (such as application

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

Case 2:14-cv-03633-PD   Document 1   Filed 06/12/14   Page 74 of 95

Page 2 of 16
428 B.R. 43, *43; 2010 U.S. Dist. LEXIS 37794, **1

of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions.

*Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal*

**HN4** An appeal of an unstayed, substantially consummated sale order under *11 U.S.C.S. § 363* is moot.

*Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal*

**HN5** *11 U.S.C.S. § 363(m)* limits appellate jurisdiction over an unstayed sale order issued by a bankruptcy court to the narrow issue of whether the property was sold to a good faith purchaser. *11 U.S.C.S. § 363(m)*. Specifically, *§ 363(m)* provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. The Second Circuit, like the majority of other circuits, strictly enforces the so-called statutory mootness rule of *§ 363(m)*, such that, regardless of the merit of an appellant's challenge to a sale order, a reviewing court may neither reverse nor modify the judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted.

*Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal*

**HN6** *11 U.S.C.S. § 363(m)* imposes a jurisdictional limitation on appeals of unstayed *§ 363* sale orders. The limitation of the issues on appeal generally is warranted where an appellant did not seek a stay pending appeal and reflects the view that an appellant is rightly burdened with the risks associated with challenging a sale authorization when that appellant did not first seek to stay the sale. Moreover, *§ 363(m)* applies even when a stay was denied by the district court after a motion for a stay was timely made because statutory mootness recognizes that a reviewing court may be powerless to undo or rewrite the terms of the consummated sale. The rule thus furthers the policy of finality in bankruptcy sales and assists the bankruptcy court to secure the best price for the debtor's assets.

*Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal*

**HN7** *11 U.S.C.S. § 363(m)*'s strict limitation of issues on appeal of an unstayed sale order does not distinguish between jurisdictional and non-jurisdictional challenges.

*Civil Procedure > ... > Jurisdiction > Subject Matter Jurisdiction > General Overview*

**HN8** Despite the maxim that subject matter jurisdiction can be raised at any time, valid procedural rules cannot be ignored just because the jurisdictional decision is being challenged rather than the decision on the merits.

*Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal*

**HN9** In the bankruptcy context, an appeal should also be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable. In order to overcome the strong presumption that an appeal of an unstayed, substantially consummated sale order is equitably moot, an appellant would have to establish the presence of all of the following five factors: (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the bankruptcy court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

**Counsel:** For Callan Campbell, Kevin Chadwick, et al, Edwin Agosto, Kevin Junso, et al., Joseph Berlingieri, Appellants: Steve R. Jakubowski, LEAD ATTORNEY, Coleman Law Firm, Chicago, IL.

For Motors Liquidation Company, Appellee: Harvey R. Miller, LEAD ATTORNEY, Weil, Gotshal & Manges LLP (NYC), New York, NY.

For United States Of America, Appellee: Matthew Lane Schwartz, LEAD ATTORNEY, U.S. Attorney's Office, SDNY, New York, NY.

**Judges:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**Opinion by:** NAOMI REICE

| Opinion |
| --- |

**[*45] MEMORANDUM & ORDER**

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

SEAN CORGAN

Case ID: 140500377
Control No.: 14060259

Case 2:14-cv-03633-PD   Document 1   Filed 06/12/14   Page 75 of 95

Page 3 of 16
428 B.R. 43, *45; 2010 U.S. Dist. LEXIS 37794, **1

On June 1, 2009, facing financial distress so severe that liquidation of the company was an imminent threat, and following extended negotiations with the United States Department of Treasury regarding the financing and sale of the company's assets, General Motors Corporation and certain of its affiliates (collectively, "GM" or "Debtors") commenced cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Simultaneously, GM moved for approval of the sale of substantially all of its assets to a United States Treasury-sponsored purchaser, NGMCO, [**2] Inc. (the "Purchaser" or "New GM"), pursuant to *section 363 of title 11, United States Code* (hereinafter, the "Bankruptcy Code"), (the "363 Motion" or "363 Transaction"). As the underlying transaction and instant appeal involve the interplay of certain provisions of the Bankruptcy Code, a brief sketch of this statutory landscape is warranted at the outset.

*Section 363 of the Bankruptcy Code* describes the rights and powers of the trustee or debtor-in-possession with respect to the use, sale or lease of property of the bankruptcy estate. See 3 *COLLIER ON BANKRUPTCY P 363.01* (15th ed. rev. 2009). Specifically, *section 363(b)* authorizes the sale of property of the estate other than in the ordinary course of business, subject to notice and hearing requirements. See id. at P 363.02. *Section 363(f)* permits the sale of estate property "free and clear" of an interest in the property under certain [**46] circumstances. See id. at P 363.06. Finally, *section 363(m)* limits the scope of appellate review of unstayed *section 363* sale orders to the issue of the purchaser's good faith generally mooting appeals brought on other grounds and thus protecting good faith purchasers from the effects of reversal or [**3] modification on appeal once the sale has closed. See id. at P 363.11.

Appellants here ("Appellants" or "Campbell Appellants") are five products liability claimants whose contingent claims arise from injuries sustained prior to Debtors' chapter 11 filing and 363 Motion. These injuries allegedly involve GM vehicles. Prepetition, Appellants had each commenced litigation proceedings against GM in various state and federal courts. Appellees are the Debtors,

including Motors Liquidation Company, the Purchaser [collectively, "MLC"), and the United States on behalf of the Department of Treasury ("USA," or, together with MLC, "Appellees"). In the Bankruptcy Court, Appellants objected to Debtors' 363 Motion, arguing (i) that *section 363(f) of the Bankruptcy Code* does not authorize a sale "free and clear" of potential post-Closing in personam products liability claims against New GM and, further, (ii) that the Bankruptcy Court lacked subject matter jurisdiction to enjoin post-Closing disputes between, inter alia, products liability claimants and New GM. [1] On July 5, 2009, the Bankruptcy Court approved the 363 Transaction over the objections of Appellants and others. That Transaction has since [**4] closed and been consummated.

Presently before the Court is an appeal from the Bankruptcy Court's Sale Order. The appeal is directed specifically to the provisions authorizing the sale of the Purchased Assets "free and clear" of Appellants' existing products liability claims and enjoining any successor liability claims they may have against New GM. For the reasons discussed below, the appeal is denied as moot, and the judgment of the Bankruptcy Court is affirmed.

**BACKGROUND**

[2]

To preserve the going-concern value of GM's assets and business, and consistent with the over $ 19 billion in financing provided by the Treasury, Debtors filed the 363 Motion to approve the sale of substantially all of GM's assets, and the assumption of certain contracts and leases and their assignment, to the Treasury-sponsored Purchaser for over $ 90 billion in consideration. MLC Br. 8, Appellants Br. 7. The Purchaser would acquire the subject assets, assume certain specified liabilities, and not assume other liabilities that were not deemed "commercially necessary for the viability . . . [of] New GM." See, [*47] e.g., MLC CD-141 (July 1, 2009 Hr'g Tr. 135: 16-20, Dkt. No. 3205).

Specifically, the over $ 90 billion in consideration [**6] to GM consisted of: a *section 363 (k)* credit bid equal to the

[1]  While Appellants' opening brief indicated that they had not filed proofs of claim against Debtors in the Bankruptcy Court, Appellants Br. 1 n.l, Appellants' counsel clarified at oral argument that four of the five Appellants have filed proofs of claim. See Mar. 24, 2010 Oral Argument Tr. ("Tr.") 41:8-9.

[2]  The factual and procedural background of Debtors' underlying bankruptcy petition and 363 Motion, and the 363 Transaction itself, is more fully set forth in Bankruptcy Judge Gerber's thorough 87-page opinion approving the 363 Transaction, 363 Transaction, In re General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) ("Sale Op."), familiarity with which is assumed. Indeed, as one of our colleagues has noted in connection with this [**5] bankruptcy case, "No sentient human is unaware of the travails of the automobile industry in general and of    [GM] in particular." In re General Motors Corp., No. M-47 (LAK), 2009 U.S. Dist. LEXIS 61279, 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009) ("Dist. Stay Op."). Accordingly, and given that the disposition of the instant appeal does not turn on any material factual dispute among the parties, only certain aspects of the transactional and procedural background need be summarized here.

SEAN CORGAN

Case ID: 140500377
Control No.: 14060259

Case 2:14-cv-03633-PD   Document 1   Filed 06/12/14   Page 76 of 95

Page 4 of 16

428 B.R. 43, *47; 2010 U.S. Dist. LEXIS 37794, **6

amount of indebtedness owed to the Purchaser as of the closing under certain credit facilities defined in the MPA (the UST Credit Facilities and the DIP Facility) less the amount of indebtedness under the DIP Facility; the cancellation of warrants issued by GM to the Treasury; the issuance by the Purchaser to the Debtors of 10% of the common stock of the Purchaser as of the closing; the issuance by the Purchaser to the Debtors of warrants to purchase up to an additional 15% of the shares of common stock of the Purchaser; and the assumption by the Purchaser of certain Assumed Liabilities (a defined term in the parties' agreement and proposed Sale Order), which removed tens of billions of dollars of claims against the Debtors from the chapter 11 cases. *Sale Op., 407 B.R. at 482.*

Following notice and hearing, numerous objections to the 363 Transaction were served and considered but no other offers of any kind were received by GM, no alternative to the Sale was proffered, nor was it argued that the sale was not in GM's best interest. *Id. at 494.* [3] Indeed, the Bankruptcy Court found that the only alternative to an immediate sale [**7] was liquidation. Only the United States Treasury was prepared to finance Debtors' chapter 11 administration, and their DIP financing was expressly conditioned upon GM's seeking and obtaining expedited approval of the 363 Transaction. *Id. at 480.* As the Bankruptcy Court found, liquidation would have been "a disastrous result for GM's creditors, its employees, the suppliers who depend on GM for their own existence, and the communities in which GM operates" since, in the event of liquidation, creditors such as Appellants and other objectors who were trying to increase their incremental recoveries "would get nothing." *Id. at 474.*

Furthermore, the Bankruptcy Court found, and Appellants do not dispute, that the 363 Transaction, as contemplated by the Master Sale and Purchase Agreement and the Amended and Restated Master Sale and Purchase Agreement (collectively, the "MPA"), see Appellants Br., App. B, was the product of good-faith negotiations between Debtors and their key stakeholders, including the Treasury and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"). *Id. at 494-95;* see also Tr. 33:17 (Appellants" counsel conceding that the Purchaser was a purchaser in good faith).

The allocation of certain liabilities, such as contingent products liability claims based on accidents or losses

already sustained (the "Existing Products Claims," which include those of Appellants here) and potential products liability claims based on accidents or losses not yet sustained but projected to arise in the future (the "Future Products Claims"), was preliminarily determined during the initial rounds of negotiations. It was agreed that the assets would be sold free and clear of [*48] such liabilities, but that, [**9] should the Purchaser later agree to assume more of certain liabilities, including the products claims, there would be no downward adjustment in the consideration received by the Debtors. See Appellants Br. 5-7 (discussing "politically sensitive" liabilities). Negotiations continued following the filing of the 363 Motion and, prior to the Sale Hearing, the MPA was amended to provide that (i) New GM would indemnify GM's dealer network for any Existing or Future Products Claims successfully asserted against the dealers, *Sale Op., 407 B.R. at 505 n.110,* and (ii) New GM would assume liability for all Future Products Claims that arose post-Closing, regardless of whether the vehicle involved was manufactured pre-Closing. *Id. at 481-82.* However, the transfer of the Purchased Assets was to remain free and clear of any Existing Products Claims.

The agreement between the Debtors and the Purchaser, as embodied in the MPA and the Sale Order itself, made clear that the Purchaser would not pursue the 363 Transaction unless the assets were sold free and clear of those liabilities the Purchaser had not agreed to assume, including the Existing Products Claims of Appellants here:

> The Purchaser would not [**10] have entered into the MPA and would not consummate the 363 Transaction (i) if the sale of the Purchased Assets was not free and clear of all liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), including rights or claims based on any successor or transferee liability or (ii) if the Purchaser would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, other than, in each case, the Assumed Liabilities. The Purchaser will not consummate the 363 Transaction unless [the Bankruptcy Court] expressly orders that none of the Purchaser, . . . or the Purchased Assets will have any liability whatsoever with

---

[3]   The Bankruptcy Court found that the 363 Transaction was designed to preserve the going concern value of those assets that the Treasury and the Purchaser considered essential for New GM to be a competitive, economically viable entity; avoid systemic failure related to the United States automobile industry; permit the continued employment of hundreds of thousands of workers; protect communities dependent upon the continuation of the business; restore consumer confidence; and help establish an automotive manufacturing business that would be viable, competitive, reliable, [**8] and a standard bearer for United States industry. See id. at 480.

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

Case 2:14-cv-03633-PD   Document 1   Filed 06/12/14   Page 77 of 95

Page 5 of 16

428 B.R. 43, *48; 2010 U.S. Dist. LEXIS 37794, **10

respect to . . . any liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, . . . other than as expressly provided herein or in agreements made by the Debtors and/or the Purchaser on the record at the Sale Hearing or in the MPA.

Appellants Br., App. B (Sale Order) P DD (emphasis added). Furthermore, section 7.1 of the MPA expressly provided:

The respective obligations of Purchaser [**11] and Sellers to consummate the transactions contemplated by this Agreement are subject to the fulfillment or written waiver (to the extent permitted by Law), prior to or at the Closing, of each of the following conditions:

(a) The Bankruptcy Court shall have entered the Sale Approval Order and Sale Procedures Order on terms acceptable to the Parties ....

Appellants Br., App. B (MPA) Art. VII § 7.1 (emphasis added).

Accordingly, the principal relevant provisions' [4] of the Sale Order, negotiated by the parties, authorized by the Bankruptcy Court, and presently challenged on appeal, provided:

. Except for the Assumed Liabilities, pursuant to *sections 105(a)* and *363(f) of the Bankruptcy Code*, the Purchased Assets shall be transferred to the Purchaser in accordance with the MPA, and, upon the Closing, shall be free and clear of all liens, claims, encumbrances, and other interests of any [*49] kind or nature whatsoever . . . including rights or claims based on any successor or transferee liability . . . [which] shall attach to the net proceeds of the 363 Transaction in the order of their priority ....

Sale Order S1 7; see also id. PP AA, 10; *Sale Op., 407 B.R. at 500 n.92* (citing Proposed Order).

. Purchaser [**12] shall not be deemed . . . to: (i) be a legal successor ... to the Debtors . . .,

(ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. . . . Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims including, but not limited to, under any theory of successor or transferee liability, . . . and products or antitrust liability.

Sale Order P 46.

. [A]ll persons and entities, including but not limited to litigation claimants holding liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against or in a Seller or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the 363 Transaction, are forever barred, estopped, and permanently enjoined [**13] from asserting against the Purchaser, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

Sale Order P8; see also id. P47; *Sale Op., 407 B.R. at 500 n.92* (citing Proposed Order).

The Sale Order further provided that its provisions were "nonseverable and mutually dependent on each other." Sale Order P69; see id. P47. [5]

On July 5, 2009, following a three-day evidentiary hearing on the 363 Motion, the Bankruptcy Court entered the Sale Order and Sale Opinion, authorizing the 363 Transaction free and clear of claims and barring successor liability and other disputes [**14] between, inter alia, products liability claimants and Purchaser New GM as provided in the foregoing excerpts. While the Bankruptcy Court's Sale Opinion did not expressly address the jurisdictional objection of the Campbell Objectors-Appellants in such

---

[4]   See also Appellants Br 9 (citing Sale Order PP BB, DD, 6-8, 48 as granting similar relief).

[5]   In addition, the Sale Order provided that the Bankruptcy Court retained exclusive jurisdiction to interpret, implement, and enforce the Sale Order's terms and provisions and to protect the Purchaser against any of the Retained Liabilities -- i.e., those left with Old GM -- or the assertion of any lien, claim, encumbrance, or other interest against the Purchased Assets. Id. I 71.

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *49; 2010 U.S. Dist. LEXIS 37794, **17

terms, the court noted generally that "[b]ankruptcy courts have the power to authorize sales of assets at a time when there is still value to preserve -- to prevent the death of the patient on the operating table." *Sale Op., 407 B.R. at 474.* In determining the scope of the Bankruptcy Court's authority under *section 363(f)* to authorize the sale "free and clear" of the Existing Products Claims, and to authorize the injunctive provisions barring any successor liability claims, the Bankruptcy Court acknowledged the split among the circuits on this statutory interpretation issue, [*50] and analyzed persuasive (and, at that time, controlling) precedent, including the recent decision of the bankruptcy court in *In re Chrysler LLC, 405 B.R. 84 (Bankr. S.D.N.Y. 2009),* which had been summarily affirmed by the Second Circuit. *See Sale Op., 407 B.R. at 499-506.* In addition, the Bankruptcy Court noted that injunctions of the character requested in the [**15] Proposed Order had been issued by the bankruptcy courts in both *Chrysler* and *In re Trans World Airlines, Inc., 322 F.3d 283, 286-87 (3d Cir. 2003)* ("TWA"), the latter being "the leading case on the *[section 363(f)]* issue." *Sale Op., 407 B.R. at 504; see id. at 506 n.lll* (citing *In re Chrysler,* No. 09-50002 (Bankr. S.D.N.Y. June 1, 2009) (Order Granting 363 Sale PP W-BB, 9-23), and *TWA, 322 F.3d at 286-87*). [7]

In approving the 363 Transaction and Sale Order, the Bankruptcy Court expressly found that the Purchaser was a good faith purchaser, both for sale approval purposes and "for the purpose of the protections *section 363(m)* provides." *Sale Op., 407 B.R. at 494; see also* Sale Order P 55. [8] The July 5, 2009 Sale Order provided for a four-day stay of its effectiveness to allow objectors to appeal, while authorizing Debtors and the Purchaser to close the 363 Transaction on or after Noon on July 9, 2009. Sale Order P 70. The Sale Order also included a provision emphasizing that "[a]ny party objecting to this Order

[**17] must exercise due diligence in filing any appeal and pursuing a stay or risk its appeal being foreclosed as moot in the event Purchaser and the Debtors elect to close prior to this Order becoming a Final Order." Id. at P 70.

On July 6, 2009, Appellants and the Ad Hoc Asbestos Claimants' Committee ("Asbestos Committee") filed separate motions under *28 U.S.C. § 158(d) (2)* for certification of a direct appeal of the Sale Order to the Second Circuit. *See In re General Motors Corp., 409 B.R. 24, 27 (Bankr. S.D.N.Y. 2009)* ("Stay Op."). The Asbestos Committee -- but not Appellants here -- also moved in the alternative for a stay of the Sale Order pending appeal pursuant to *Rule 8005 of the Federal Rules of Bankruptcy Procedure. Id. at 29.* The Bankruptcy Court denied both motions in a July 7, 2009 decision. *Id. at 35.* [9]

[*51] The following day, on July 8, 2009, the Asbestos Committee -- but, again, not Appellants here -- filed an emergency motion in this Court for an expedited appeal and a stay of the Sale Order pending appeal. On July 9, 2009, Judge Kaplan denied the Asbestos Committee's motion for a stay in all respects. *Dist. Stay Op., 2009 U.S. Dist. LEXIS 61279, 2009 WL 2033079 at *2.* In reaching this conclusion, Judge Kaplan noted, inter alia, that the terms of MPA conditioned the purchaser's obligation to close upon the Sale Order's not having been stayed and that even a brief stay would constitute a default under the DIP Agreement. *2009 U.S. Dist. LEXIS 61279, [WL] at *1.* However, and notwithstanding "the significant possibility that the appeal will be mooted by the consummation of the sale," Judge Kaplan granted the Asbestos Committee's motion in the alternative for an expedited appeal in the

---

[6]   In *Chrysler,* after the Second Circuit reaffirmed in a full opinion its earlier summary affirmance of the bankruptcy court's order authorizing a *section 363* sale of the assets of the former *Chrysler LLC, 405 B.R. 84 (Bankr. S.D.N.Y. 2009),* "for the reasons stated in the opinions of Bankruptcy Judge Gonzalez," see*576 F.3d 108, 111 (2d Cir. 2009),* the Indiana State Pension Police Trust filed a petition for certiorari to the Supreme Court. While that certiorari petition was pending, the *section 363* sale of Chrysler's assets was consummated. On December 14, 2009, the Supreme Court issued a summary order granting certiorari, vacating the judgment of the Second Circuit, and remanding with instructions to dismiss the appeal as moot. *Indiana State Police Pension Trust v. Chrysler LLC, 130 S. Ct. 1015, 1015, 175 L. Ed. 2d 614 (2009),* [**16] vacating*576 F.3d 108 (2d Cir. 2009); see also In re Chrysler LLC, 592 F.3d 370, 370 (2d Cir. 2010)* (per curiam) (dismissing the appeal on remand).

[7]   In explaining the general principle that, if a buyer cannot obtain protection against successor liability, it may pay less for the assets because of the risk, the Bankruptcy Court noted parenthetically that "[w]hether the U.S. and Canadian Governments would have lent and ultimately bid a lesser amount here is doubtful, but this consideration provides the - context for deciding [the] legal issues . . . ." *Sale Op., 407 B.R. at 500 n.91.*

[8]   See 11 U.S.C. § 363(m). The significance of this undisputed finding for *section 363(m)* purposes is discussed further below.

[9]   In concluding its discussion of the factors relevant to the stay motion, the Bankruptcy Court reasoned that staying the 363 Transaction and risking the unraveling of the deal essentially for the sake of preserving appellate arguments that could otherwise [**18] be mooted following closing was unacceptable. In this connection, the Bankruptcy Court noted, "It comes as no surprise to me the Individual Tort Litigants [i.e., Appellants here] did not ask me for a stay." See *id. at 34.*

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *51; 2010 U.S. Dist. LEXIS 37794, **17

District Court. *2009 U.S. Dist. LEXIS 61279, [WL] at *2.* [10]

Although Appellants' counsel had observed the July 9 hearing before Judge Kaplan on the Asbestos Committee's motions, Appellants did not join in those motions or participate in the hearing. In addition, Appellants' counsel chose not to participate in the expedited briefing schedule set in the District Court's July 9, 2009 opinion, explaining by letter to Judge Kaplan that the Campbell Appellants instead planned to appeal pursuant to *Rule 8006 of the Federal Rules of Bankruptcy Procedure.* USA Br., Ex. D (July 14, 2009 Jakubowski Letter). The appeal was timely filed in this Court and has since been fully briefed and supplemented with letters from Appellants and MLC Appellees regarding the Supreme Court's December 14, 2009 decision vacating the Second Circuit's judgment in Chrysler. [11] The Court heard oral argument on March 24, 2010, and has since received additional letters from Appellants and MLC Appellees. [12] Following extensive briefing, oral argument, and supplemental submissions, the appeal **[**20]** is ripe for decision.

## STANDARD OF REVIEW

*HN1* District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to *28 U.S.C. § 158(a),* and may "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree." *Fed.R. Bankr. P. 8013.* *HN2* We review the legal conclusions of the Bankruptcy Court de novo, and its findings of fact under the clearly erroneous standard. *See Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.), 415 B.R. 77, 83 (S.D.N.Y. 2009)* (citing *Applied Theory Corp. v. Halifax Fund, L.P. (In re Applied Theory Corp.), 493 F.3d 82, 85 (2d Cir. 2007)). HN3* The approval of a sale of assets under *section 363 of the Bankruptcy Code* is generally reviewed for abuse of discretion. *See In re Chrysler LLC, 576 F.3d at 119* (discussing the discretionary test of *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983)).* A bankruptcy court abuses its discretion **[**21]** when it arrives at "(i) a decision resting on an error of law (such **[*52]** as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions."

*Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 678 (2d Cir. 2003)* (internal quotation and alteration marks omitted).

## DISCUSSION

On appeal, Appellants essentially press their objections to the 363 Motion in the Bankruptcy Court, namely, that (i) *section 363(f)* does not authorize a sale free and clear of their in personam products liability claims; and (ii) the bankruptcy court lacked subject matter jurisdiction to bar or enjoin disputes between the products liability claimants and New GM based on successor liability or other theories. Appellants Br. 11-13. Appellants ask this Court to order the revision of the Sale Order to modify or strike what they frame as its offending provisions authorizing the sale of the Purchased Assets free and clear of their contingent products liability claims and barring Appellants from pursuing **[**22]** successor liability claims against New GM. Appellants Br. 11, 20; Appellants Reply Br. 3.

While the issues of statutory interpretation underlying these objections may be debatable, the response to Appellants' objections on appeal is straightforward: we cannot grant the requested relief because the appeal is moot. The law in this context is clear and well settled. Because the Sale Order was not stayed pending appeal, and the 363 Transaction has since closed, the issues Appellants seek to raise on appeal are statutorily moot under *Section 363(m) of the Bankruptcy Code. See 11 U.S.C. § 363(m).* Moreover, the appeal is equitably moot because Appellants have not made the requisite showing to overcome the Second Circuit's presumption that *HN4* an appeal of an unstayed, substantially consummated sale order is moot. *See Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 10 F.3d 944, 949-50, 952 (2d Cir. 1993)* ("Chateaugay II").

Appellants struggle mightily to overcome the dispositive effect of *Section 363(m)* by advancing the argument that the Bankruptcy Court lacked "colorable" jurisdiction to enjoin their successor liability claims against New GM. However, Appellants do not advance **[**23]** a colorable argument in support of their position. Even taking Appellants' jurisdictional argument at face value, the contention that the Bankruptcy Court lacked "colorable" jurisdiction would fly in the face of persuasive historic and recent precedent. Moreover, it is clear that Appellants'

[10] It seems that, having pursued all avenues to preserve their litigation position by seeking a stay up to that point, **[**19]** the Asbestos Committee declined to seek a stay of the Sale Order in the Court of Appeals -- and ultimately withdrew their appeal of the Sale Order following the closing of the 363 Transaction.

[11] See Dec. 16, 2009 Miller Letter; Dec. 21, 2009 Jakubowski Letter; Dec. 21, 2009 Miller Letter; Dec. 23, 2009 Jakubowski Letter

[12] See Mar. 25, 2010 Jakubowski Letter; Mar. 31, 2010 Miller Letter; Apr. 4, 2010 Jakubowski Letter.

SEAN CORGAN

Case ID: 140500377
Control No.: 14060259

428 B.R. 43, *52; 2010 U.S. Dist. LEXIS 37794, **23

purported jurisdictional challenge is nothing more than the inverse of their merits arguments regarding the interpretation of *section 363(f)*.

Second, Appellants' efforts to avoid equitable mootness fail for several reasons. For example, the very nature of the requested relief, to the extent it could even be granted, would result in an inequitable rewriting of the Sale Order. The ability to interlineate the Sale Order was never within the power of the Bankruptcy Court in the first instance. At this stage, Appellants' requested revisions would unscramble the terms of the 363 Transaction, since, try as Appellants might, the relief they seek based on alleged jurisdictional defects could not be limited without creating an inequitable result.

As we are not persuaded by Appellants' arguments to overcome the mootness of this appeal, we do not proceed to further analysis of the merits of the Bankruptcy Court's [**24] interpretation of *section 363(f)*.

[*53] I. *Section 363(m)* Mootness

**A. General Limitation of Appellate Issues**

*HN5* *Section 363(m) of the Bankruptcy Code* limits appellate jurisdiction over an unstayed sale order issued by a bankruptcy court to the narrow issue of whether the property was sold to a good faith purchaser. *11 U.S.C. § 363(m)*; *Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.), No. 07-4772 bk, 600 F.3d 231, 2010 U.S. App. LEXIS 6285, 2010 WL 1135448, at *12 (2d Cir. Mar. 26, 2010)*; *Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 105 F.3d 837, 839 (2d Cir.)* ("Gucci I"), cert. denied, *520 U.S. 1196, 117 S. Ct. 1552, 1553, 137 L. Ed. 2d 701 (1997)*; see also *United States v. Salerno, 932 F.2d 117, 123 (2d Cir. 1991)*. Specifically, *section 363(m)* provides that

> [t]he reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the

pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

*11 U.S.C. § 363 (m)*. The Second Circuit, like the majority of other circuits, strictly enforces this so-called [**25] statutory mootness rule of *section 363(m)*, such that, "regardless of the merit of an appellant's challenge to a sale order, [a reviewing court] may neither reverse nor modify the judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted." *Gucci I, 105 F.3d at 840*; see *In re Lehman Bros., 415 B.R. at 85*. The Court of Appeals' recent decision in *In re WestPoint Stevens, Inc.* emphasized that *HN6 section 363(m)* imposes a jurisdictional limitation on appeals of unstayed *section 363* sale orders. See *2010 U.S. App. LEXIS 6285, 2010 WL 1135448 at *12* ("We adhere to our holding in *Gucci I* that . . we lack jurisdiction to review the entire Sale Order -- not just the actual sale transaction."). [13]

"This limitation of the issues on appeal generally is warranted where an appellant did not seek a stay pending appeal and reflects the view that an appellant is rightly burdened with the risks associated with challenging a sale authorization when that appellant did not first seek to stay the sale." *Gucci I, 105 F.3d at 840*. Moreover, *section 363(m)* applies even when a stay was denied by the district court after a motion for a stay was timely made because statutory mootness recognizes that a reviewing court "may be powerless to undo or rewrite [**27] the terms of the consummated sale." Id. (citing *Salerno, 932 F.2d at 123*). The rule thus furthers the policy of finality in bankruptcy sales and assists the bankruptcy court to secure the best price for the debtor's assets. *In [*54] re WestPoint Stevens, Inc., 2010 U.S. App. LEXIS 6285, 2010 WL 1135448 at *13*; *Salerno, 932 F.2d at 123*.

In this case, Appellants did not even seek a stay of the Sale Order, and neither the Bankruptcy Court nor the District Court granted the Asbestos Committee's application for a stay pending appeal. The 363 Transaction closed in July

---

[13]    While the Second Circuit had noted in *Gucci I* that it was unclear from the text of *section 363(m)* why "an appellate court . . could not order some form of relief other than invalidation of the sale," its holdings in both *Gucci I* and *WestPoint Stevens* underscored the jurisdictional effect of statutory mootness. See *In re WestPoint Stevens, Inc., 2010 U.S. App. LEXIS 6285, 2010 WL 1135448 at *12* (citing cases including *Gucci I, 105 F.3d at 838*).

Thus, to the extent Appellants would seek [**26] to frame their appeal as a challenge only to particular provisions of the Sale Order and not to the "validity" of the 363 Transaction itself, that would be a "specious distinction" *In re Lehman Bros., 415 B.R. at 85*; see *In re WestPoint Stevens, Inc., 2010 U.S. App. LEXIS 6285, 2010 WL 1135448 at *12*. We cannot rewrite the terms of the negotiated MPA and Sale Order, in which the "free and clear" provisions were critical and nonseverable terms of the bargained-for transaction. See, e.g., *In re Lehman Bros., 415 B.R. at 85* ("As the bankruptcy court found, [the purchaser] demanded that the sale be free and clear of liens, and without that term no sale would have occurred.").

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *54; 2010 U.S. Dist. LEXIS 37794, **27

2009. Thus, under *section 363(m)*, this Court's review of the Sale Order is limited to the sole issue of whether the Purchaser acted in good faith. E.g., *Gucci I, 105 F.3d at 840.* Since Appellants do not contest the Bankruptcy Court's finding that the Purchaser was acting in good faith, see Tr. 33:17-18; see also *Sale Op., 407 B. R. at 494*; Sale Order P 55, and this Court sees no indication that the good-faith finding was erroneous, this appeal is moot.

## B. Appellants' Jurisdictional Challenge

Rather than challenging the good faith of the purchaser, Appellants counter that the rule of *section 363(m)* applies only to the extent that a bankruptcy court has acted [**28] within the scope of its limited subject-matter jurisdiction, and argue that the Bankruptcy Court lacked "colorable" authority "under its 'related to' jurisdiction to order a sale 'free and clear' of Appellants' in personam products liability claims against New GM." See Appellants Br. 14. However, a substantial body of both historic and immediate precedent shows that Appellants' jurisdictional arguments are meritless.

## 1. Foreclosure of Jurisdictional Challenges by *Section 363(m)*

As a threshold matter, while the Second Circuit has not expressly decided the issue, other circuits have held that *HN7 section 363(m)*'s strict limitation of issues on appeal of an unstayed sale order does not distinguish between jurisdictional and non-jurisdictional challenges. *Pittsburgh Food & Bev., Inc. v. Ranallo (In re Ranallo), 112 F.3d 645, 650 (3d Cir. 1997)* ("[S]ection 363(m) does not distinguish between a challenge to an order approving a sale predicated on jurisdictional grounds and a challenge based on other grounds."); see also *In re Sax, 796 F.2d 994, 997 (7th Cir. 1986)* ("*Section 363(m)* does not say that the sale must be proper under *§ 363 (b)*; it says the sale must be authorized under *§ 363(b).*"); *Parker v. Goodman (In re Parker), 499 F.3d 616, 622-624 (6th Cir. 2007)* [**29] (surveying case law, including *Sax* and *Ranallo*, and rejecting jurisdictional attack as moot); *In re Wieboldt Stores, Inc., 92 B.R. 309, 311-12 (N.D. Ill. 1988)* (applying *Sax* to find challenge to 363(f) "free and clear" provision moot). Moreover, the limitation of jurisdictional challenges by *section 363(m)* is consistent with existing Second Circuit authority emphasizing the importance of finality in bankruptcy sales and recognizing a reviewing court's "place in the statutory scheme." *In re WestPoint Stevens, Inc., 2010 U.S. App. LEXIS 6285, 2010 WL 1135448 at *12*; cf. *2010 U.S. App. LEXIS 6285, [WL] at *14* (distinguishing challenge to an appealing party's standing from the issue of a reviewing court's application

of *section 363(m)*, and rejecting the purported standing challenge as moot); *Salerno, 932 F.2d at 122* (rejecting challenge to propriety of *section 363* sale distribution as moot, and declining to address challenge to appellate jurisdiction in light of *section 363(m)* mootness); *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.), 177 B.R. 791, 808 (S.D.N.Y. 1995)* (dismissing jurisdictional challenge as equitably moot under Chateaugay II).

With respect to the interaction of *section 363(m)* and jurisdictional challenges, [**30] the Seventh Circuit's reasoning in *Sax* is instructive. Appellant was a lien claimant on property sold as an asset of the debtor's estate pursuant to *section 363*. The appellant [*55] argued that the subject property was not part of the debtor's estate and that the sale order therefore exceeded the bankruptcy court's jurisdiction. *Sax, 796 F.2d at 996*. The court of appeals held that the appeal was moot because the appellants failed to obtain a stay and the court "[could not] reach the question of whether the bankruptcy court had jurisdiction to order and approve the sale." *Id. at 998*. Noting that the bankruptcy court had jurisdiction to determine the issue of its own jurisdiction and that such a decision stands unless it is appealed properly, the Seventh Circuit reasoned that, *"HN8* [d]espite the maxim that 'subject matter jurisdiction can be raised at any time,' valid procedural rules cannot be ignored just because the jurisdictional decision is being challenged rather than the decision on the merits." *Id.*

Appellants here likewise failed to appeal the Sale Order properly because they failed even to seek, much less obtain, a stay. Appellants' direct appeal of the Sale Order -- whether based on jurisdictional [**31] or other grounds -- is therefore moot. See id. To hold otherwise not only would "ignore valid procedural requirements," see id., but also would be inconsistent with the Second Circuit's clear policy of finality in bankruptcy sales and the reality, discussed further below, that this Court is powerless to rewrite the terms of the 363 Transaction. See, e.g.; *Gucci I, 105 F. 3d at 840*; *Salerno, 932 F.2d at 123*. [14]

Second, this case does not fall within the potential narrow exception to *section 363(m)* mootness suggested in the dicta of *Ranallo*, the Third Circuit case upon which Appellants' seem to premise their entire jurisdictional counterargument. See *112 F. 3d at 650*. In *Ranallo*, the court of appeals noted that "it might be claimed that a bankruptcy court usurped power so that even absent a stay, notwithstanding *section 363(m)*, an order reversing an order approving a sale permissibly could affect the validity of the sale of assets" where "the [**32] bankruptcy court

---

14   As none of the holdings in Salerno, Sax, or Ranallo depended on the "absence of real harm of the objecting party," Appellants' attempt to distinguish these authorities on that basis (or otherwise) is unpersuasive. See Appellants Reply Br. 4-5.

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *55; 2010 U.S. Dist. LEXIS 37794, **32

approved the sale of assets not even colorably within its jurisdiction." Id. Notwithstanding this statement, however, the *Ranallo* Court actually held that the appeal before it _was_ moot under 363(m) because the bankruptcy court had at least colorable jurisdiction over the assets, which the debtor-appellant indirectly owned. Id.; see also *In re Parker, 499 F.3d at 624* (finding the potential exception recognized in Ranallo inapplicable).

Since there is no argument on this appeal that the Purchased Assets were not property of the Debtors' estate, [15] the theoretical distinction posited in the *Ranallo* dicta plainly does not apply here. Insofar as Appellants use Ranallo as the foundation for their "colorable jurisdiction" argument, that case becomes a one-legged stool: its dicta is inapposite; and its statutory mootness holding was basically the opposite of the outcome Appellants seek here -- notwithstanding that the purported jurisdictional challenge in *Ranallo* went to a more fundamental issue (namely, whether the assets sold were property of the estate) than the arguments advanced in this appeal. Moreover, Appellants have not cited, and this Court's research has not found, [**33] a single case that has applied or [*56] extended Ranallo's "colorable jurisdiction" dicta to hold that *section 363(m)* did not moot a jurisdictional challenge to an unstayed *section 363* sale. [16] As Appellants have not offered a persuasive reason to depart from precedent, we decline their invitation to do so here.

**2. The Bankruptcy Court's Authority to Issue the Challenged Provisions**

Even assuming/ arguendo, that Appellants' challenge to the Bankruptcy Court's authority is not itself mooted by *section 363(m)*, their arguments regarding "colorable"

jurisdiction nonetheless lack merit. "Colorable" means "appearing to be true, valid, or right." BLACK'S LAW DICTIONARY, colorable (8th ed. 2004); cf. Tr. 16:18-17:5 (colloquy regarding "colorable"). Appellants do not challenge the Bankruptcy Court's "inherent [or core] jurisdiction" to [**34] determine "whether the 'free and clear' provisions of the sale apply to _in personam_ claims." Appellants Reply Br. 3 (citing *Back v. LTV Corp. (In re Chateaugay Corp. ), 213 B.R. 633, 638 (S.D.N.Y. 1997)*). Having conceded this point, as they must under well-settled law, see *Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millennium Seacarriers, Inc. ), 458 F.3d 92, 95 (2d Cir. 2006)* ("'[O]rders approving the sale of property' constitute core proceedings [under] *28 U.S.C. § 157(b)(2)(N)*"), Appellants' arguments focus instead on the Bankruptcy Court's alleged lack of "related to" jurisdiction over successor liability actions against the Purchaser. See Appellants Br. 17-18 (citing *In re Chateaugay Corp., 213 B.R. at 639; Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1994); Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 162 (7th Cir. 1994)*).

Appellees counter, and the Court agrees, that Appellants' focus on "related to" (that is, non-core) jurisdiction is misplaced. [17] The jurisdictional issue here, if any, is the Bankruptcy Court's "core" or "arising under" jurisdiction to approve the 363 Transaction and issue the Sale Order. It is well-settled that bankruptcy courts [**35] have core jurisdiction to approve [*57] *section 363* sale, see*28 U.S.C. § 157(b)(2)(N)* ("[C]ore proceedings include . . . orders approving the sale of property ."), and corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code. See*11 U.S.C. § 105(a)*; cf. also*28 U.S.C. § 1651* ("All Writs Act"). Moreover, courts have characterized the injunctive

---

[15]   Rather, Appellants challenge the Bankruptcy Court's interpretation that "interests in property" under *section 363(f)* includes *in personam* choses in action arising under state law successor liability theories. E.g., Appellants Br. 25 n.10, Appellants Reply Br. 10-11.

[16]   At oral argument, Appellants' counsel confirmed that he had not found any such authority. (Tr. 17:25.

[17]   Appellants' arguments with respect to "related to" jurisdiction rely principally on In re Chateaugay Corp. for the proposition that a bankruptcy court's "related to" jurisdiction does not encompass [**37] the power to enjoin state successor liability actions against the Purchaser of the Debtors' assets in the absence of any articulated legal basis for an indemnity action or some other "conceivable effect" on the Debtors. See Appellants Br. 16-19; Appellants Reply Br. 3. Notably, however, In re Chateaugay Corp. involved not an objection to a *section 363* sale order, but an adversary proceeding for declaratory and injunctive relief seeking to enjoin state court actions against a purchaser of assets years after consummation of a chapter 11 plan.

While Zerand-Bernal Group found that the bankruptcy court lacked authority to enjoin successor liability against a purchaser following a *section 363* "free and clear" sale, the posture of that case was also that of an adversary proceeding commenced years after the winding up of the underlying bankruptcy Thus, the Seventh Circuit's analysis of "related to" jurisdiction in Zerand-Bernal Group, like that of this Court in In re Chateaugay Corp , is distinguishable from this direct appeal of the Bankruptcy Court's ruling, because the issuance of the Sale Order and its disputed provisions plainly "arose under" the proceedings in the Bankruptcy Court and [**38] were not "tenuous" to that proceeding. Cf. Zerand-Bernal Group, 23 F.3d at 162. Furthermore, we note that courts in this District have declined to follow the more "restrictive" interpretation of *section 363(f)* evinced in Zerand-Bernal Group. See In re Portrait Corp. of America, Inc., 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009) (finding jurisdiction to enforce injunctive provisions in its "free and clear" sale order pursuant to *section 363(f)* and declining to follow Zerand-Bernal Group).

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *57; 2010 U.S. Dist. LEXIS 37794, **35

authority of bankruptcy courts as "core" when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the "free and clear" authority of *section 363(f)*. See *In re Millennium Seacarriers, Inc., 458 F.3d at 95* (holding that an adversary action which turned on the terms of a sale order was a core proceeding) ; *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1144-45 (6th Cir. 1991)* (affirming bankruptcy court's core jurisdiction to issue an order because, inter alia, debtor-appellant and its successor-purchaser asserted "free and clear" rights under *section 363(f)*); see also *TWA, 322 F.3d at 288-91* (successor liability claims against purchaser were properly extinguished under *section 363(f)*); *Smart World Techs. LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 169 n.3 (2d Cir. 2005)* [**36] ("*Section 363* permits sales of assets free and clear of claims and interests. It thus allows purchasers ... to acquire assets without any accompanying liabilities.") (emphasis added); *cf. MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 93 (2d Cir. 1988)* ("The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's ... authority ... to make sure that claims to [the debtor's] insurance proceeds were ... channeled to the settlement fund and

could not be asserted directly against the insurers. The authority to issue the injunction is thus a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds."); *id. at 94* (citing *section 363 (f)* cases as support for injunctive authority). The injunctive provisions in the Sale Order enjoining successor liability would thus be within the Bankruptcy Court's core jurisdiction to authorize and effectuate the 363 Transaction "free and clear" of Appellants' claims under *section 363(f)*.

Appellants challenge the Bankruptcy Court's "colorable" jurisdiction on the grounds that the Bankruptcy Court lacked authority to enjoin their in personam successor liability claims under *section 363(f)*. [18] However, at the time the Sale [*58] Opinion and Order were issued, the Bankruptcy Court's interpretation and exercise of its authority under *section 363(f)* was consistent" with the opinions of at least three Second Circuit judges -- whose ranks have since expanded to include a panel of three different judges who also affirmed the proposition that *section 363(f)* authorizes the sale of assets "free and clear" of successor tort liability, [19] another Bankruptcy Judge in this District, as well as panels of judges [**39] in other circuits including the Third and Fourth Circuits. Moreover, the subsequent vacatur of the Chrysler appeal -- an

---

[18]  In supplemental letter briefing submitted after oral argument, Appellants cite the Second Circuit's recent decision in In re Johns-Manville Corp., Nos. 06-2103-bk, 06-2118-bk, 06-2186-bk, 600 F.3d 135, 2010 U.S. App. LEXIS 5877, 2010 WL 1007832, at *14-*16 (2d Cir. Mar. 22, 2010) ("Manville [**40] IV"), on remand from Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009), to support their argument that *section 363(f)* did not authorize the Bankruptcy Court to transfer GM's assets free and clear of Appellants' in personam products liability claims. See Apr. 4, 2010 Jakubowski Letter, at 1. While Manville IV held that the bankruptcy court exceeded its in rem jurisdiction, that jurisdictional holding is inapposite.

The underlying settlement approval orders at issue in Manville III and Manville IV, the latest installments in the complex and decades-long bankruptcy saga of asbestos manufacturer Johns-Manville, channeled potential policy claims against the insurers of the company into a settlement trust. As we noted above, the Second Circuit had cited the "free and clear" provision of *section 363(f)* as analogous authority when initially affirming the channeling injunctions, but noted that the Johns-Manville injunctions were distinct from the sort of free and clear injunctions typically authorized by 363(f). See MacArthur, 837 F.2d at 94; see also 11 U.S.C. § 524(g) (codifying a version of the bankruptcy court's channeling injunction in the Manville case); Manville IV, 2010 U.S. App. LEXIS 5877, 2010 WL 1007832 at *15. [**41] In any event, the Court of Appeals' recent holding in Manville IV is distinguishable not only because a different source of injunctive authority was at issue, but also because that appeal involved the bankruptcy court's injunction of another liability insurer's third-party contribution and indemnity claims against a settling insurer based on the settling insurer's allegedly independent wrongdoing, where the non-derivative claim did not involve the res of the estate. Instead, the appellant-insurer sought to impose separate liability on the settling insurer. See 2010 U.S. App. LEXIS 5877, 2010 WL 1007832 at *14. In addition, and in contrast to the instant case, the appellant-insurer in Manville IV lacked adequate notice of the underlying channeling and settlement orders such that due process concerns rendered mootness and res judicata doctrines inapplicable. 2010 U.S. App. LEXIS 5877, [WL] at *20.

[19]  As discussed at oral argument, the Second Circuit recently issued a summary order emphasizing both the public policy and statutory bases for affirming a district court's dismissal of successor liability claims that were asserted against a purchaser in a *section 363* sale. Douglas v. Stamco, No. 09-1390-cv, 363 Fed. Appx. 100, 2010 U.S. App. LEXIS 2107, 2010 WL 337043, at *2 (2d Cir. Feb. 1, 2010). [**42] In Stamco, the Second Circuit cited TWA and reasoned that allowing successor tort claims to proceed directly against the purchaser would be inconsistent with the Bankruptcy Code's priority scheme. 2010 U.S. App. LEXIS 2107, [WL] at *2. The Court of Appeals further emphasized the importance of finality and respect for the bargains struck in *section 363* sales:

> [T]o the extent that the "free and clear" nature of the sale (as provided for in the Asset Purchase Agreement
> ("APA") and § 363(f)) was a crucial inducement in the sale's successful transaction, it is evident that the potential
> chilling effect of allowing a tort claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code,

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *58; 2010 U.S. Dist. LEXIS 37794, **39

immediate precedent involving 363(f) "free and clear" provisions and injunctions against successor liability, see *Sale Op., 407 B.R. at 506 & n. 111* -- is instructive. In affirming the bankruptcy court's sale order in Chrysler, the Second Circuit's full opinion made clear, specifically with respect to successor liability claims of the existing products liability claimants, that "[b]ecause appellants' claims arose from Old Chrysler's property, *§ 363(f)* permitted the bankruptcy court to authorize the [s]ale free and clear of appellants' interest in the property." *576 F.3d at 126.* [20] As noted above, following the closing of the *section 363* sale, the Supreme Court vacated the Second Circuit's affirmance and remanded with instructions to dismiss the appeal as moot. *Indiana State Police Pension Trust, 130 S. Ct. at 1015.*

Federal courts have an independent obligation to examine, *sua sponte,* [**43] the presence or absence of subject matter jurisdiction. E.g., *Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006)* (citing *Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 328 (2d Cir. 2005)).* [21] Given this fundamental principle, [*59] it was implicit in the Supreme Court's instructions to dismiss the *Chrysler* appeal as moot -- which left the bankruptcy court's sale order intact -- that the bankruptcy court had jurisdiction to enjoin existing claimants' successor liability claims against the purchaser pursuant to *section 363(f).* See id. Of course, the same implication flows from the Second Circuit's more recent summary order in Stamco. See *2010 U.S. App. LEXIS 2107, 2010 WL 337043 at *2.*

In light of the foregoing historic and immediate precedent finding bankruptcy courts possessed of such authority

pursuant to *section 363(f),* it is clear that the Bankruptcy Court had more than "colorable" jurisdiction to issue the Sale Order's injunctive provisions providing that [**44] the Purchased Assets would be transferred "free and clear of all liens, claims, encumbrances, and other interests . . . including rights or claims based on any successor or transferee liability." Sale Order P 7. Indeed, to contend otherwise is simply not a "colorable" argument.

Beyond the veil of Appellants' jurisdictional challenge, it is clear that Appellants are asking us to review whether the Bankruptcy Court interpreted *section 363(f)* correctly. Indeed, in their briefing and at oral argument, Appellants have essentially conceded that their jurisdictional argument is merely the inverse of their merits critique of the Bankruptcy Court's interpretation of *section 363(f).* [22] Appellants' argument that the Bankruptcy Court misinterpreted that provision of the Bankruptcy Code is thus addressing an alleged legal error -- which is fundamentally distinct from the question of whether the Bankruptcy Court had "colorable" authority to reach the statutory interpretation it did and to issue the Sale Order in accordance with that interpretation. See *United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 176 L. Ed. 2d 158, 2010 WL 1027825, at *6 (2010).* [23] In any event, given the foregoing authority, [**45] which confirms that the jurisdiction of the Bankruptcy Court was more than colorable, and that the strict limitation of *section 363(m)* applies on this appeal, any merits analysis of the Bankruptcy Court's application of *section 363(f)* is beyond our power to review. *In re WestPoint Stevens, Inc., 2010 U.S. App. LEXIS 6285, 2010 WL 1135448 at * 13-14;* see also *Gucci I, 105 F.3d at 840* ("[R]egardless of the merit of an

---

which is to maximize the value of the assets and thereby maximize potential recovery to the creditors.

Id. (citing *Tubb v. Radloff, 501 U.S. 157, 163, 111 S. Ct. 2197, 115 L. Ed. 2d 145 (1991),* In re Gucci, 126 F.3d at 387 (2d Cir. 1997) ("Gucci II")).

[20] While the Second Circuit expressly declined to define the scope of the bankruptcy court's authority to extinguish the potential claims of future claimants in Chrysler, such claims are not at issue on this appeal. See *576 P.3d at 127.*

[21] Indeed, it is precisely because of this obligation that we have considered the Bankruptcy Court's jurisdiction more extensively in this opinion -- notwithstanding the persuasive authority that *section 363(m)* forecloses even this aspect of Appellants' appeal.

[22] See Appellants Reply Br. 2-3; see also Tr. 16:7-11 ("THE COURT: But your jurisdictional argument is really just an inverse of a merits argument on statutory interpretation. MR. JAKUBOWSKI: That's absolutely true. That's absolutely true.").

[23] In Espinosa, the Supreme Court rejected a Rule 60(b) challenge to a bankruptcy court's confirmation order, notwithstanding the bankruptcy court's legal error in not making a finding of "undue hardship" before confirming the discharge of a portion of the debtor's student loan debt as required by statute. *176 L. Ed. 2d 158,* Id. at *8. The unanimous Court noted the importance of finality when [**46] litigants have failed to avail themselves of available procedures and emphasized that "a judgment is not void [under *Rule 60(b)*] . . . simply because it is or may have been erroneous." *176 L. Ed. 2d 158,* Id. at *6 (internal citations and quotation marks omitted). The Espinosa Court's reasoning is applicable here: while not specifically presented with a jurisdictional challenge, the Supreme Court noted that courts considering Rule 60(b)(4) motions based on a jurisdictional defect "generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction" since "total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and only rare instances of a clear usurpation of power will render a judgment void." Id. (internal citations and quotation and alteration marks omitted) (emphasis added). Cf., e.g., In re Sax, 796 F.2d at 997 (distinguishing between propriety and authorization of a *section 363* sale).

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *59; 2010 U.S. Dist. LEXIS 37794, **48

appellant's challenge ... we may neither reverse nor modify the judicially-authorized [*60] sale if the entity that purchased or leased the property did so in good faith and if no stay was granted."). [24]

## II. Equitable Mootness

As discussed above, _section 363(m)_, is dispositive of this appeal, which is denied on that basis. [25] For purposes of completeness, however, we emphasize that the appeal would also be equitably moot.

**HN9** In the bankruptcy context, "[a]n appeal should also be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." _Chateaugay II, 10 F.3d at 949-950_. In order to overcome the "strong presumption" in this Circuit that an appeal of an unstayed, substantially consummated sale order is equitably moot, _In re Delta Air Lines, Inc._, _374 B.R. 516, 522 (S.D.N.Y. 2007)_, Appellants would have [**48] to establish the presence of _all_ of the following five factors:

> (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders

appealed from.

_Chateaugay II, 10 F.3d at 952-53_; [26]_see ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 367 B.R. 84, 92 & n.27 (S.D.N.Y. 2007)_.

We need not address Appellants' showing with respect to each of the five _Chateaugay II_ factors in turn because, as the discussion below will demonstrate, Appellants have failed to establish the presence of any of the requisite factors except one, [27] and have thus failed to overcome the strong presumption of mootness. See, e.g., _In re Delta Air Lines, 374 B.R. at 522_. For example, it is clear that, inter alia, (i) this Court cannot fashion effective relief without rewriting and unraveling the integrated [*61] terms of this extensively negotiated transaction -- which would be beyond our power; and (ii) Appellants' failure to pursue a stay with diligence has created a situation where it would be inequitable to reverse or modify the Sale Order as requested on this appeal.

With respect to both of these issues, Appellants essentially argue that their failure to seek a stay is "of no moment" in this case -- either because they sought an expedited appeal, while a stay was sought by another appellant (the Asbestos Committee), and both of those applications were denied, Appellants Br. 23, or because the "elective surgery" they now ask this Court to perform on the Sale Order involves "de minimis" amounts that would not unravel the 363 Transaction and therefore would not be inequitable. See, e.g., Appellants Reply Br. 7-8. These arguments are unavailing.

As a threshold matter, the requested remedy (characterized as "elective surgery" on the Sale Order to "carve out" its offending provisions) is beyond the power of this Court to grant. See _In re Adelphia Commc'ns Corp., 367 B.R. at 97_ (holding in equitable mootness analysis that the appellants' suggested "relief would rewrite the terms of

[24]   Without accepting Appellants' invitation to further analyze the merits, we would note only that, as suggested by our foregoing discussion of jurisdiction, Bankruptcy Judge Gerber's thorough analysis [**47] was consistent with persuasive -- and then-controlling -- precedent in this District and Circuit as well as the leading cases from other circuits with respect to the interpretation of _section 363(f)_. Moreover, as we noted at oral argument, Appellants' granular interpretive critique would seem only to undermine their "colorable jurisdiction" claim. See, e.g., Tr. 24:23-24.

[25]   Appellants concede that _section 363(m)_ is dispositive if it applies. Tr. 18:18-20; see In re WestPoint Stevens, Inc., 2010 U.S. App. LEXIS 6285, 2010 WL 1135448 at *17.

[26]   As _Chateaugay II_ involved an appeal from an order approving a plan of reorganization, the threshold test includes asking whether "a reorganization [has been] substantially consummated," and one of the five factors [**49] refers to a debtors' "re-emergence" from bankruptcy. However, the doctrine of equitable mootness in general, and the _Chateaugay II_ test in particular, applies analogously in appeals from orders approving asset sales under _section 363_. See In re Lehman Bros., 415 B.R. at 85 n.7.

[27]   The parties to this appeal do not dispute that "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity [**50] to participate in the proceedings." See Chateaugay II, 10 F.3d at 953.

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *61; 2010 U.S. Dist. LEXIS 37794, **48

the bargain, which is beyond the power of the Court"); *see also Salerno, 932 F.2d at 123* (reasoning that" [i]t [**51] is . . . beyond the power of this Court to rewrite the terms of the trustee's sale of the assets" following consummation of the unstayed sale); *In re Source Enterprises, 392 B.R. 541, 550 (S.D.N.Y. 2008)* ("[C]ourts have found it difficult to sever one piece of a [p]lan, and have noted that such severance might ignore the tradeoff that allowed the parties to settle in the first instance and would treat a non-severable provision of [their agreement] as dispensable.") (internal quotation marks omitted).

As the Bankruptcy Court found, and as discussed above, the various terms of the Sale Order providing for the free and clear sale of the Purchased Assets were of critical significance to the 363 Transaction. *See, e.g.,* Sale Order PDD. [28] Following the renegotiation of the agreements between Debtors and the Purchaser providing that the Purchaser would assume the Future Products Claims, the newly-expanded Assumed Liabilities still did not include the Existing Products Claims. *See, e.g.,* Appellants Br. 7–8.

Moreover, the parties anticipated and contracted against the sort of interlinear relief Appellants request here. *See id.* App. B (MPA) Art. VII § 7.1. In other words, the Bankruptcy Court [**52] could not have modified the Sale Order without the parties' consent or written waiver. *Cf. Sale Ord. 407 B.R. at 517* ("This Court has found that the Purchaser is entitled to a free and clear order. The Court cannot create exceptions to that by reason of this Court's notions of equity."). [29] [*62] This Court likewise lacks the power to rewrite the Sale Order.

Focusing next on the fifth *Chateaugay II* factor, we find that Appellants' deliberate failure [**54] to "pursue[] with diligence all available remedies to obtain a stay of execution of the objectionable order" has indeed "creat[ed] a situation rendering it inequitable to reverse the orders appealed from." *See Chateaugay II, 10 F.3d at 952–53.* [30] Assuming, *arguendo,* that this Court had accepted Appellants' jurisdictional argument, found *section 363(m)* inapplicable, and further found that the Bankruptcy Court lacked authority to enjoin successor products liability

---

[28]   Appellants' emphasis on Bankruptcy Judge Gerber's footnote that "[w]hether the U.S and Canadian Governments would have lent and ultimately bid a lesser amount here is doubtful," and on the fact that the consideration for the Purchased Assets did not change after the Purchaser agreed to assume the Future Products Claims, is unavailing. First, Bankruptcy Judge Gerber's observation was clearly made in the context of his general explication of the "free and clear" provision of *section 363(f),* and was not a conclusive finding of fact. Second, and more importantly, the Bankruptcy Court did find that the express terms of the Sale Order and MPA made clear that the free and clear provisions were indispensable and integrated terms of the 363 Transaction, without which the deal would not have been consummated.

[29]   As we noted during oral argument, [**53] *see* Tr. 12:24-13:7, a judge's power in this context is limited to an expression of disapproval and does not extend to a rewriting of the negotiated agreement, as recent and well-publicized cases in this District illustrate. *See SEC v. Bank of America Corp., 653 F. Supp. 2d 507, 512 (S.D.N.Y. 2009)* (Rakoff, J.) (rejecting a proposed consent judgment as unfair, unreasonable, and inadequate and directing parties to submit case management schedule for prompt trial); Mark Hamblett, *Judge's Rejection of 9/11 Settlement Raises Questions About His Asserted 'Power of Review',* N.Y.L.J. (Mar. 24, 2010), at 1 (col. 3) (discussing Judge Hellerstein's rejection of a proposed settlement on the grounds that the settlement was inadequate). A similar result would have followed if the Bankruptcy Court (or this Court on appeal) had determined that jurisdiction was lacking to approve the "free and clear" provisions of the 363 Transaction: the Sale Order would have been rejected, not rewritten. *Cf. In re Source Enterprises, 392 B.R. at 550* (discussing bankruptcy court's inability to rewrite a settlement agreement).

[30]   We emphasize that the Second Circuit has made it clear that an appellant is obligated to protect its litigation position by seeking a stay -- even where a stay may be unlikely [**55] to be granted. *See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 144-45 (2d Cir. 2005)* ("A chief consideration under *Chateaugay II* is whether the appellant sought a stay .... We insist that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one . . . . In the absence of any request for a stay, the question is not solely whether we *can* provide relief without unraveling the Plan, but also whether we *should* provide such relief in light of fairness concerns."); *see also In re Chateaugay Corp., 988 F.2d 322, 326 (2d Cir. 1993)* ("Chateaugay I") ("The party who appeals without seeking to avail himself of [the] protection [of a stay] does so at his own risk.").

In this connection, we are not persuaded by Appellants' argument that, by seeking a stay (and arguing irreparable harm due to potential mootness), they would have risked being judicially estopped from contesting mootness on this appeal. *See* Appellants Br. 24; Appellants Reply Br. 8  An appellant's argument at a stay hearing regarding irreparable harm due to potential mootness may well be used against them in appellate litigation if that [**56] stay is denied *See* Stay Opp. 409 B.R. at 31 ("This case, like most of those addressing the issue, comes with both sides wanting to hedge their bets."); *In re Adelphia Commc'ns Corp., 367 B.R. at 93* (applying judicial estoppel). Nonetheless, Appellants' choice was clear under governing law and by the terms of the Sale Order itself: either seek a stay or face potential mootness on appeal. *See* Sale Order P 70. At oral argument, it became clear that Appellants' counsel deliberately chose not to seek a stay because he was confident that the appeal would not be equitably mooted. This was an audacious litigation strategy. *See* Tr. 20:16-17. Nonetheless, having not sought the stay, Appellants are now faced with the consequences of that choice. *See Chateaugay I, 988 F.2d at 326.* A known litigation risk did not give Appellants license to flout well-settled procedural rules. Accepting appellants' argument to the contrary would both frustrate the policy of the

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

Page 15 of 16

428 B.R. 43, *62; 2010 U.S. Dist. LEXIS 37794, **56

claims against the Purchaser, our ruling and consequent reversal of the Sale Order on jurisdictional grounds would have to apply to all existing products liability claimants, not [*63] merely the five Campbell Appellants before us on this appeal. [31] The "selective" jurisdictional relief requested would be inequitable because, while courts strive to be neutral and apply the law without favor to anyone, Appellants ask this Court to favor them over other similarly situated products liability claimants who did not pursue an appeal of the unstayed Sale Order. [32]

Alternatively, and further assuming, arguendo, that this Court were able to fashion broader relief applicable to all Existing Products Claims or even just the selective relief sought by the Appellants, rewriting the Sale Order to eliminate the application of the "free and clear" or injunctive provisions to these claimants would nonetheless unravel a fundamental aspect of the integrated 363 Transaction and undermine the subsequent transactions that have occurred since the Closing. Appellants' request to reapportion their Existing Products Claims to New GM cannot be considered "de minimis". [33] Even focusing solely on the products liability claims of the five appellants before us, the punitive damages that could potentially attach to those claims would greatly increase [**59] the amounts at issue. See Tr. 28:15. Moreover, as counsel for MLC Appellees explained at oral argument, there are approximately $ 129 billion worth of claims against the Debtor relating to pending litigation, the

majority of which are products liability claims. Tr. 32:5-8, 35:22-23.

Although, like the Bankruptcy Court, this Court is not unsympathetic to the plight of the accident victims here, see Appellants Reply Br. 9-10, we note that their position in the bankruptcy appears to be neither better nor worse than that of any other unsecured contingent creditor. [*64] Moreover, the relief Appellants sought in the Bankruptcy Court and now seek from this Court would unravel the 363 Transaction, the only alternative to which was a liquidation in which they and other unsecured creditors would have received nothing.

## CONCLUSION

For the foregoing reasons, the appeal is denied as moot, and the judgment of the Bankruptcy Court is AFFIRMED. We have carefully considered all of Appellants' arguments and, to the extent they are not explicitly addressed in this opinion, we have found them to be either moot or without merit.

## SO ORDERED.

Dated: New York, New York

April 12, 2010

/s/ Naomi Reice Buchwald

---

equitable mootness doctrine and undermine the doctrine itself. Cf. In re Parker, 499 F.3d at 622 & n.5 (rejecting as "absurd" the argument of an appellant, a defendant in an adversary proceeding, who neither sought a stay nor filed a direct [**57] appeal of the underlying bankruptcy order but claimed that he had no obligation to appeal from a purportedly invalid and illegal order: "The very nature of an appeal is to challenge perceived errors in a lower court's rulings. To permit a party to circumvent proper procedures for review in this manner would . . . cast asunder congressionally-enacted procedures for review").

[31] In this connection, the Court agrees with Appellees that the requested relief, based on an alleged jurisdictional defect in the Sale Order, would "knock the props out" from the numerous transactions into which New GM has entered since the 363 Transaction closed over eight months ago transactions which depended upon the terms of the Sale Order not being disturbed. See, e.g., USA Br. 23 (discussing transactions since the closing); Tr. 34:18-21 (counsel discussing same).

[32] Appellants' counsel responded to this line of inquiry from the Court during oral argument by saying that, because the other products liability claimants did not file a direct appeal, they would be collaterally estopped from arguing that any reversal and modification of the Sale Order should apply to them. See Tr. 41:18-42:4. First, we are not persuaded [**58] by Appellants' reliance on res judicata doctrines to suggest that the relief they seek would not be inequitable or would not unravel the Sale Order. Moreover, we note that this strict procedural rejoinder from Appellants' counsel is somewhat ironic in light of Appellants' own choice not to comply with well-established bankruptcy procedure to seek a stay and preserve their litigation position here. See, e.g., supra, note 30.

[33] The cases cited by Appellants do not support their argument that effective and equitable relief is available in this case because their claims are "de minimis". See Appellants Br. at 23. For example, in LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.), 167 B.R. 776 (S.D.N.Y. 1994) ("Chateaugay III"), there was no showing that the deal involved financial transactions that could not be unwound because the transaction only involved a surety's payment to the debtor in return for a release of claims. Id. at 778-79. Appellants also cite In re Aurora Foods, Inc., No. 04-160(GMS), 2006 U.S. Dist. LEXIS 91659, 2006 WL 3747306, at *4 (D. Del. 2006), but that case is easily distinguishable because the district court was applying the Third Circuit's formulation of the equitable mootness test, which seems to place the burden on appellees to establish mootness under a differently formulated multi-factor test, rather than requiring appellants [**60] to show the existence of this Circuit's five Chateaugay II factors to overcome the presumption of mootness. See 2006 U.S. Dist. LEXIS 91659, [WL] at *4. What is more, the appellant in Aurora had actually sought a stay, which was denied. See id.

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

428 B.R. 43, *64; 2010 U.S. Dist. LEXIS 37794, **59

NAOMI REICE BUCHWALD                    UNITED STATES DISTRICT JUDGE

SEAN CORGAN

Case ID: 140500377
Control No.: 14060259

Neutral
As of: June 2, 2014 9:59 AM EDT

Filed and Attested by
PROTHONOTARY
02 JUN 2014 04:14 pm
E. MASCUILLI

# In re GMC

United States Bankruptcy Court for the Southern District of New York
July 5, 2009, Decided
Chapter 11 Case No. 09-50026 (REG), (Jointly Administered)

**Reporter:** 2009 Bankr. LEXIS 5565

In re GENERAL MOTORS CORP., et al., Debtors.

## Core Terms

Purchaser, Retiree, encumbrances, executory contract, Settlement, Assumable, successor, liens, assigns, rights, Liabilities, documents, Procedures, recorded, parties, Lease, Lenders, obligations, consummate, Cure, Termination, terms, transferee liability, provisions, entities, estates, effective, dealers, set forth, secured claim

## Case Summary

### Procedural Posture

In this jointly administered Chapter 11 case involving a major auto maker, the debtors moved for an order pursuant to 11 U.S.C.S. §§ 105(a), 363, and 365, authorizing and approving an amended and restated Master Sale and Purchase Agreement providing for the sale of purchased assets of the debtor, free and clear of all liens, claims, encumbrances, and interests, to a purchaser wholly owned by the U.S. Treasury.

### Overview

This sale motion involved the purchase of assets of a major auto maker by an entity owned by the U.S. Treasury. The court found that adequate and sufficient notice of the sale motion, the sale hearing, and the sale had been provided to all interested parties, and a reasonable opportunity to object or be heard had been afforded to all interested parties as well. The court approved the sale because it concluded that the sale was necessary to avoid systemic failure and dire consequences, including the loss of hundreds of thousands of auto-related jobs. The sale was found to be in the best interests of the debtor, its creditors, its estate, and other parties in interest. The debtors demonstrated both good, sufficient, and sound business purpose and justification and compelling circumstances supporting the sale pursuant to applicable provisions of the Bankruptcy Code, including 11 U.S.C.S. §§ 105 and 363, prior to, and outside of, a plan of reorganization. The debtors could not continue to operate their businesses. Thus, the only way to preserve and maximize value was to consummate the sale, which was to the highest and best offer through an open and complete sale process.

### Outcome

The court granted the debtors' motion and approved the sale.

**Counsel:** [*1] For Motors Liquidation Company, aka GMC Truck Division, aka Automotive Market Research, aka NAO Fleet Operations, aka National Car Rental, aka GM Corporation, aka National Car Sales, aka GM Corporation-GM Auction Department, fka General Motors Corporation, Debtor: Daniel R. Murray, Jenner & Block, LLP, Chicago, IL; David R. Berz, Weil Gotshal & Manges, LLP, Washington, DC; Deborah Kovsky-Apap, Pepper Hamilton LLP, Detroit, MI; Donald F. Baty, Jr., Judy B. Calton, Robert B. Weiss, Tricia A. Sherick, Honigman Miller Schwartz and Cohn, LLP, Detroit, MI; Harvey R. Miller, Joseph H. Smolinsky, Robert J. Lemons, Stephen Karotkin, Weil, Gotshal & Manges, LLP, New York, NY; Joseph R. Sgroi, Honigman Miller Schwartz and Cohn LLP, Detroit, MI; Patrick J. Trostle, Jenner & Block LLP, New York, NY.

For United States Trustee, U.S. Trustee: Andrea B. Schwartz, Dept. of Justice - Office of the U.S. Trustee, New York, NY; Andrew D. Velez-Rivera, Office of the U.S. Trustee, New York, NY; Brian Shoichi Masumoto, Office of the United States Trustee, New York, NY.

For GCG, Inc. Claims Agent, a/k/a The Garden City Group, Inc., Claims and Noticing Agent: Jeffrey S. Stein, The Garden City Group, Inc., Melville, [*2] NY.

For Official Committee of Unsecured Creditors of General Motors Corporation, Creditor Committee: Adam C. Rogoff, David E. Blabey, Gordon Z. Novod, Gregory G. Plotko, Jennifer Sharret, Kramer Levin Naftalis & Frankel LLP, New York, NY; Amy Caton, Thomas Moers Mayer, Kramer Levin Naftalis & Frankel, LLP, New York, NY; Eric Fisher, Dickstein Shapiro LLP, New York, NY; Lauren Macksoud, Kramer Levin LLP, New York, NY; Philip Bentley, Robert T. Schmidt, Kramer, Levin, Naftalis & Frankel, LLP, New York, NY.



Case ID: 140500377
Control No.: 14060259

2009 Bankr. LEXIS 5565, *2

For Official Committee of Unsecured Creditors Holding Asbestos-Related Claims, Creditor Committee: Lauren Macksoud, Kramer Levin LLP, New York, NY.

**Judges:** Robert E. Gerber, UNITED STATES BANKRUPTCY JUDGE.

**Opinion by:** Robert E. Gerber

Opinion

**ORDER (I) AUTHORIZING SALE OF ASSETS PURSUANT TO AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT WITH NGMCO, INC., A U.S. TREASURY-SPONSORED PURCHASER; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated June 1, 2009 (the "**Motion**"), of General Motors Corporation ("**GM**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), [*3] pursuant to *sections 105, 363*, and *365 of title 11, United States Code* (the "**Bankruptcy Code**") and *Rules 2002, 6004*, and *6006 of the Federal Rules of Bankruptcy Procedure* (the "**Bankruptcy Rules**") for, among other things, entry of an order authorizing and approving (A) that certain Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, by and among GM and its Debtor subsidiaries (collectively, the "**Sellers**") and NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (the "**Purchaser**"), a purchaser sponsored by the United States Department of the Treasury (the "**U.S. Treasury**"), together with all related documents and agreements as well as all exhibits, schedules, and addenda thereto (as amended, the "**MPA**"), a copy of which is annexed hereto as Exhibit "A" (excluding the exhibits and schedules thereto); (B) the sale of the Purchased Assets[1] to the Purchaser free and clear of liens, claims, encumbrances, and interests (other than Permitted Encumbrances), including rights or claims based on any successor or transferee liability; (C) the assumption and assignment of the Assumable Executory Contracts; (D) the establishment of certain Cure Amounts; [*4] and (E) the UAW Retiree Settlement Agreement (as defined below); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with *28 U.S.C. §§ 157* and *1334* and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

of Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to *28 U.S.C. § 157(b)*; and venue being proper before this Court pursuant to *28 U.S.C. §§ 1408* and *1409*; and due and proper notice of the Motion having been provided in accordance with this Court's Order, dated June 2, 2009 (the "**Sale Procedures Order**"), and it appearing that no other or further notice need be provided; and a hearing having been held on June 30 through July 2, 2009, to consider the relief requested in the Motion (the "**Sale Hearing**"); and upon the record of the Sale Hearing, including all affidavits and declarations submitted in connection therewith, and all of the proceedings had before the Court; and the Court having reviewed the Motion and all objections thereto (the "**Objections**") and found and [*5] determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by *Bankruptcy Rule 6003* and is in the best interests of the Debtors, their estates and creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

FOUND AND DETERMINED THAT:

A. The findings and conclusions set forth herein and in the Court's Decision dated July 5, 2009 (the "**Decision**") constitute the Court's findings of fact and conclusions of law pursuant to *Fed. R. Bankr. P. 7052*, made applicable to this proceeding pursuant to *Fed. R. Bankr. P. 9014*.

B. To the extent any of the following findings of fact or Findings of Fact in the Decision constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law or Conclusions of Law in the Decision constitute findings of fact, they are adopted as such.

C. This [*6] Court has jurisdiction over the Motion, the MPA, and the 363 Transaction pursuant to *28 U.S.C. §§ 157* and *1334*, and this matter is a core proceeding pursuant to *28 U.S.C. § 157(b)(2)(A)* and *(N)*. Venue of these cases and the Motion in this District is proper under *28 U.S.C. §§ 1408* and *1409*.

D. The statutory predicates for the relief sought in the Motion are *sections 105(a), 363*, and *365 of the Bankruptcy Code* as supplemented by *Bankruptcy Rules 2002, 6004*, and *6006*.

E. As evidenced by the affidavits and certificates of service and Publication Notice previously filed with the

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion or the MPA.

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

2009 Bankr. LEXIS 5565, *6

Court, in light of the exigent circumstances of these chapter 11 cases and the wasting nature of the Purchased Assets and based on the representations of counsel at the Sale Procedures Hearing and the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Procedures, the 363 Transaction, the procedures for assuming and assigning the Assumable Executory Contracts as described in the Sale Procedures Order and as modified herein (the "**Modified Assumption and Assignment Procedures**"), the UAW Retiree Settlement Agreement, and the Sale Hearing have been provided in accordance with *Bankruptcy Rules 2002(a)*, [*7] *6004(a)*, and *6006(c)* and in compliance with the Sale Procedures Order; (ii) such notice was good and sufficient, reasonable, and appropriate under the particular circumstances of these chapter 11 cases, and reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, about the Sale Procedures, the sale of the Purchased Assets, the 363 Transaction, and the assumption and assignment of the Assumable Executory Contracts, and to reach all UAW-Represented Retirees about the UAW Retiree Settlement Agreement and the terms of that certain Letter Agreement, dated May 29, 2009, between GM, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), and Stember, Feinstein, Doyle & Payne, LLC (the "**UAW Claims Agreement**") relating thereto; and (iii) no other or further notice of the Motion, the 363 Transaction, the Sale Procedures, the Modified Assumption and Assignment Procedures, the UAW Retiree Settlement Agreement, the UAW Claims Agreement, and the Sale Hearing or any matters in connection therewith is or shall be required. [*8] With respect to parties who may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors (including, but not limited to, potential contingent warranty claims against the Debtors), the Publication Notice was sufficient and reasonably calculated under the circumstances to reach such parties.

F. On June 1, 2009, this Court entered the Sale Procedures Order approving the Sale Procedures for the Purchased Assets. The Sale Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets. The Debtors received no bids under the Sale Procedures for the Purchased Assets. Therefore, the Purchaser's bid was designated as the Successful Bid pursuant to the Sale Procedures Order.

G. As demonstrated by (i) the Motion, (ii) the testimony and other evidence proffered or adduced at the Sale Hearing, and (iii) the representations of counsel made on the record at the Sale Hearing, in light of the exigent circumstances presented, (a) the Debtors have adequately

marketed the Purchased Assets and conducted the sale process in compliance with the Sale Procedures Order; (b) a reasonable opportunity has been [*9] given to any interested party to make a higher or better offer for the Purchased Assets; (c) the consideration provided for in the MPA constitutes the highest or otherwise best offer for the Purchased Assets and provides fair and reasonable consideration for the Purchased Assets; (d) the 363 Transaction is a sale of deteriorating assets and the only alternative to liquidation available for the Debtors; (e) if the 363 Transaction is not approved, the Debtors will be forced to cease operations altogether; (f) the failure to approve the 363 Transaction promptly will lead to systemic failure and dire consequences, including the loss of hundreds of thousands of auto-related jobs; (g) prompt approval of the 363 Transaction is the only means to preserve and maximize the value of the Debtors' assets; (h) the 363 Transaction maximizes fair value for the Debtors' parties in interest; (i) the Debtors are receiving fair value for the assets being sold; (j) the 363 Transaction will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, including liquidation under *chapters 7* or 11 of the Bankruptcy Code; (k) no other entity has [*10] offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates; (l) the consideration to be paid by the Purchaser under the MPA exceeds the liquidation value of the Purchased Assets; and (m) the Debtors' determination that the MPA constitutes the highest or best offer for the Purchased Assets and that the 363 Transaction represents a better alternative for the Debtors' parties in interest than an immediate liquidation constitute valid and sound exercises of the Debtors' business judgment.

H. The actions represented to be taken by the Sellers and the Purchaser are appropriate under the circumstances of these chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest.

I. Approval of the MPA and consummation of the 363 Transaction at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

J. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Purchased Assets pursuant to the 363 Transaction prior to, and outside of, a plan of reorganization [*11] and for the immediate approval of the MPA and the 363 Transaction because, among other things, the Debtors' estates will suffer immediate and irreparable harm if the relief requested in the Motion is not granted on an expedited

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

2009 Bankr. LEXIS 5565, *11

basis. In light of the exigent circumstances of these chapter 11 cases and the risk of deterioration in the going concern value of the Purchased Assets pending the 363 Transaction, time is of the essence in (i) consummating the 363 Transaction, (ii) preserving the viability of the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, their creditors, employees, the automotive industry, and the national economy that would be threatened by protracted proceedings in these chapter 11 cases.

K. The consideration provided by the Purchaser pursuant to the MPA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery to the Debtors' estates than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws [*12] of the United States, any state, territory, possession, or the District of Columbia.

L. The 363 Transaction must be approved and consummated as promptly as practicable in order to preserve the viability of the business to which the Purchased Assets relate as a going concern.

M. The MPA was not entered into and none of the Debtors, the Purchaser, or the Purchasers' present or contemplated owners have entered into the MPA or propose to consummate the 363 Transaction for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors. None of the Debtors, the Purchaser, nor the Purchaser's present or contemplated owners is entering into the MPA or proposing to consummate the 363 Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to any of the foregoing.

N. In light of the extensive prepetition negotiations culminating in the MPA, the Purchaser's commitment to consummate the 363 [*13] Transaction is clear without the need to provide a good faith deposit.

O. Each Debtor (i) has full corporate power and authority to execute the MPA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the MPA, (iii) has taken all corporate

action necessary to authorize and approve the MPA and the consummation by the Debtors of the transactions contemplated thereby, and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly provided for in the MPA which may be waived by the Purchaser, to consummate such transactions.

P. The consummation of the 363 Transaction outside of a plan of reorganization pursuant to the MPA neither impermissibly restructures the rights of the Debtors' creditors, allocates or distributes any of the sale proceeds, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The 363 Transaction does not constitute a *sub rosa* plan of reorganization. The 363 Transaction [*14] in no way dictates distribution of the Debtors' property to creditors and does not impinge upon any chapter 11 plan that may be confirmed.

Q. The MPA and the 363 Transaction were negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Sellers, the Purchaser, the U.S. Treasury, nor their respective agents, officials, personnel, representatives, and advisors, has engaged in any conduct that would cause or permit the MPA to be avoided under *11 U.S.C. § 363(n)*.

R. The Purchaser is a newly-formed Delaware corporation that, as of the date of the Sale Hearing, is wholly-owned by the U.S. Treasury. The Purchaser is a good faith purchaser under *section 363(m) of the Bankruptcy Code* and, as such, is entitled to all of the protections afforded thereby.

S. Neither the Purchaser, the U.S. Treasury, nor their respective agents, officials, personnel, representatives, or advisors is an "insider" of any of the Debtors, as that term is defined in *section 101(31) of the Bankruptcy Code*.

T. Upon the Closing of the 363 Transaction, the Debtors will transfer to the Purchaser substantially all of its assets. [*15] In exchange, the Purchaser will provide the Debtors with (i) cancellation of billions of dollars in secured debt; (ii) assumption by the Purchaser of a portion of the Debtors' business obligations and liabilities that the Purchaser will satisfy; and (iii) no less than 10% of the Common Stock of the Purchaser as of the Closing (100% of which the Debtors' retained financial advisor values at between $38 billion and $48 billion) and warrants to purchase an additional 15% of the Common Stock of the Purchaser as of the Closing, the combination of which the Debtors' retained financial advisor values at between $7.4 billion and $9.8 billion (which amount, for the avoidance of doubt, does not include any amount for the Adjustment Shares).

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

U. The Purchaser, not the Debtors, has determined its ownership composition and capital structure. The Purchaser will assign ownership interests to certain parties based on the Purchaser's belief that the transfer is necessary to conduct its business going forward, that the transfer is to attain goodwill and consumer confidence for the Purchaser and to increase the Purchaser's sales after completion of the 363 Transaction. The assignment by the Purchaser of [*16] ownership interests is neither a distribution of estate assets, discrimination by the Debtors on account of prepetition claims, nor the assignment of proceeds from the sale of the Debtors' assets. The assignment of equity to the New VEBA (as defined in the UAW Retiree Settlement Agreement) and 7176384 Canada Inc. is the product of separately negotiated arm's-length agreements between the Purchaser and its equity holders and their respective representatives and advisors. Likewise, the value that the Debtors will receive on consummation of the 363 Transaction is the product of arm's-length negotiations between the Debtors, the Purchaser, the U.S. Treasury, and their respective representatives and advisors.

V. The U.S. Treasury and Export Development Canada ("EDC"), on behalf of the Governments of Canada and Ontario, have extended credit to, and acquired a security interest in, the assets of the Debtors as set forth in the DIP Facility and as authorized by the interim and final orders approving the DIP Facility (Docket Nos. 292 and 2529, respectively). Before entering into the DIP Facility and the Loan and Security Agreement, dated as of December 31, 2008 (the "Existing UST Loan Agreement"), [*17] the Secretary of the Treasury, in consultation with the Chairman of the Board of Governors of the Federal Reserve System and as communicated to the appropriate committees of Congress, found that the extension of credit to the Debtors is "necessary to promote financial market stability," and is a valid use of funds pursuant to the statutory authority granted to the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008, *12 U.S.C. §§ 5201 et seq.* ("EESA"). The U.S. Treasury's extension of credit to, and resulting security interest in, the Debtors, as set forth in the DIP Facility and the Existing UST Loan Agreement and as authorized in the interim and final orders approving the DIP Facility, is a valid use of funds pursuant to EESA.

W. The DIP Facility and the Existing UST Loan Agreement are loans and shall not be recharacterized. The Court has already approved the DIP Facility. The Existing UST Loan Agreement bears the undisputed hallmarks of a loan, not an equity investment. Among other things:

(i) The U.S. Treasury structured its prepetition transactions with GM as (a) a loan, made

pursuant to and governed by the Existing UST Loan Agreement, in addition to [*18] (b) a separate, and separately documented, equity component in the form of warrants;

(ii) The Existing UST Loan Agreement has customary terms and covenants of a loan rather than an equity investment. For example, the Existing UST Loan Agreement contains provisions for repayment and pre-payment, and provides for remedies in the event of a default;

(iii) The Existing UST Loan Agreement is secured by first liens (subject to certain permitted encumbrances) on GM's and the guarantors' equity interests in most of their domestic subsidiaries and certain of their foreign subsidiaries (limited in most cases to 65% of the equity interests of the pledged foreign subsidiaries), intellectual property, domestic real estate (other than manufacturing plants or facilities) inventory that was not pledged to other lenders, and cash and cash equivalents in the United States;

(iv) The U.S. Treasury also received junior liens on certain additional collateral, and thus, its claim for recovery on such collateral under the Existing UST Loan Agreement is, in part, junior to the claims of other creditors;

(v) the Existing UST Loan Agreement requires the grant of security by its terms, as well as by separate collateral [*19] documents, including: (a) a guaranty and security agreement, (b) an equity pledge agreement, (c) mortgages and deeds of trust, and (d) an intellectual property pledge agreement;

(vi) Loans under the Existing UST Loan Agreement are interest-bearing with a rate of 3.00% over the 3-month LIBOR with a LIBOR floor of 2.00%. The Default Rate on this loan is 5.00% above the non-default rate.

(vii) The U.S. Treasury always treated the loans under the Existing UST Loan Agreement as debt, and advances to GM under the Existing Loan Agreement were conditioned upon GM's demonstration to the United States Government of a viable plan to regain competitiveness and repay the loans.

(viii) The U.S. Treasury has acted as a prudent lender seeking to protect its investment and thus expressly conditioned its financial commitment upon GM's meaningful progress

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259

Case 2:14-cv-03633-PD   Document 1   Filed 06/12/14   Page 94 of 95

Page 6 of 20
2009 Bankr. LEXIS 5565, *19

toward long-term viability.

Other secured creditors of the Debtors also clearly recognized the loans under the Existing UST Loan Agreement as debt by entering into intercreditor agreements with the U.S. Treasury in order to set forth the secured lenders' respective prepetition priority.

X. This Court has previously authorized the Purchaser to credit bid [*20] the amounts owed under both the DIP Facility and the Existing UST Loan Agreement and held the Purchaser's credit bid to be, for all purposes, a "Qualified Bid" under the Sale Procedures Order.

Y. The Debtors, the Purchaser, and the UAW, as the exclusive collective bargaining representative of the Debtors' UAW-represented employees and the authorized representative of the persons in the Class and the Covered Group (as described in the UAW Retiree Settlement Agreement) (the **"UAW-Represented Retirees"**) under *section 1114(c) of the Bankruptcy Code*, engaged in good faith negotiations in conjunction with the 363 Transaction regarding the funding of "retiree benefits" within the meaning of *section 1114(a) of the Bankruptcy Code* and related matters. Conditioned upon the consummation of the 363 Transaction and the approval of the Bankruptcy Court granted in this Order, the Purchaser and the UAW will enter into that certain Retiree Settlement Agreement, dated as of the Closing Date (the **"UAW Retiree Settlement Agreement"**), which is Exhibit D to the MPA, which resolves issues with respect to the provision of certain retiree benefits to UAW-Represented Retirees as described in the UAW Retiree Settlement [*21] Agreement. As set forth in the UAW Retiree Settlement Agreement, the Purchaser has agreed to make contributions of cash, stock, and warrants of the Purchaser to the New VEBA (as defined in the UAW Retiree Settlement Agreement), which will have the obligation to fund certain health and welfare benefits for the UAW-Represented Retirees. The New VEBA will also be funded by the transfer of assets from the Existing External VEBA and the assets in the UAW Related Account of the Existing Internal VEBA (each as defined in the UAW Retiree Settlement Agreement). GM and the UAW, as the authorized representative of the UAW-Represented Retirees, as well as the representatives for the class of plaintiffs in a certain class action against GM (the **"Class Representatives"**), through class counsel, Stemper, Feinstein, Doyle and Payne LLC (**"Class Counsel"**), negotiated in good faith the UAW Claims Agreement, which requires the UAW and the Class Representatives to take actions to effectuate the withdrawal of certain claims against the Debtors, among others, relating to retiree benefits in the event the 363 Transaction is consummated

and the Bankruptcy Court approves, and the Purchaser becomes fully bound [*22] by, the UAW Retiree Settlement Agreement, subject to reinstatement of such claims to the extent of any adverse impact to the rights or benefits of UAW-Represented Retirees under the UAW Retiree Settlement Agreement resulting from any reversal or modification of the 363 Transaction, the UAW Retiree Settlement Agreement, or the approval of the Bankruptcy Court thereof, the foregoing as subject to the terms of, and as set forth in, the UAW Claims Agreement.

Z. Effective as of the Closing of the 363 Transaction, the Debtors will assume and assign to the Purchaser the UAW Collective Bargaining Agreement and all liabilities thereunder. The Debtors, the Purchaser, the UAW and Class Representatives intend that their actions in connection with the UAW Retiree Settlement Agreement and related undertakings incorporate the compromise of certain claims and rights and shall be deemed to satisfy the requirements of *29 U.S.C. § 186(c)(2)*.

AA. The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and except for the Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets [*23] free and clear of liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), including rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in *section 101(5) of the Bankruptcy Code*) based on any successor or transferee liability, including, but not limited to (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in the Purchased Assets, or any similar rights and (ii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (b) all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether [*24] arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability.

BB. The Sellers may sell the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests

SEAN CORGAN

Case ID: 140500377
Control No.: 14060259

2009 Bankr. LEXIS 5565, *24

of any kind or nature whatsoever (other than Permitted Encumbrances), including rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in *section 363(f)(1)-(5) of the Bankruptcy Code* has been satisfied. Those (i) holders of liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, and (ii) non-Debtor parties to the Assumable Executory Contracts who did not object, or who withdrew their Objections, to the 363 Transaction or the Motion are deemed to have consented pursuant to *section 363(f)(2) of the Bankruptcy Code*. Those (i) holders of liens, claims, and encumbrances, and (ii) non-Debtor parties to the Assumable Executory Contracts who did object, fall within one or more of [*25] the other subsections of *section 363(f) of the Bankruptcy Code* and, to the extent they have valid and enforceable liens or encumbrances, are adequately protected by having such liens or encumbrances, if any, attach to the proceeds of the 363 Transaction ultimately attributable to the property against or in which they assert a lien or encumbrance. To the extent liens or encumbrances secure liabilities that are Assumed Liabilities under this Order and the MPA, no such liens or encumbrances shall attach to the proceeds of the 363 Transaction.

CC. Under the MPA, GM is transferring all of its right, title, and interest in the Memphis, TN SPO Warehouse and the White Marsh, MD Allison Transmission Plant (the "TPC Property") to the Purchaser pursuant to *section 363(f) of the Bankruptcy Code* free and clear of all liens (including, without limitation, the TPC Liens (as hereinafter defined)), claims, interests, and encumbrances (other than Permitted Encumbrances). For purposes of this Order, "TPC Liens" shall mean and refer to any liens on the TPC Property granted or extended pursuant to the TPC Participation Agreement and any claims relating to that certain Second Amended and Restated Participation Agreement and Amendment of Other Operative Documents [*26] (the "TPC Participation Agreement"), dated as of June 30, 2004, among GM, as Lessee, Wilmington Trust Company, a Delaware corporation, not in its individual capacity except as expressly stated herein but solely as Owner Trustee (the "TPC Trustee") under GM Facilities Trust No. 1999-I (the "TPC Trust"), as Lessor, GM, as Certificate Holder, Hannover Funding Company LLC, as CP Lender, Wells Fargo Bank Northwest, N.A., as Agent, Norddeutsche Landesbank Girozentrale (New York Branch), as Administrator, and Deutsche Bank, AG, New York Branch, HSBC Bank USA, ABN AMRO Bank N.V., Royal Bank of Canada, Bank of America, N.A., Citicorp USA, Inc., Merrill Lynch Bank USA, Morgan Stanley Bank, collectively, as Purchasers (collectively, with CP Lender, Agent and Administrator, the "TPC Lenders"), together with the Operative

Documents (as defined in the TPC Participation Agreements (the "TPC Operative Documents").

DD. The Purchaser would not have entered into the MPA and would not consummate the 363 Transaction (i) if the sale of the Purchased Assets was not free and clear of all liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), including rights or claims based on [*27] any successor or transferee liability or (ii) if the Purchaser would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability (collectively, the "Retained Liabilities"), other than, in each case, the Assumed Liabilities. The Purchaser will not consummate the 363 Transaction unless this Court expressly orders that none of the Purchaser, its affiliates, their present or contemplated members or shareholders (other than the Debtors as the holder of equity in the Purchaser), or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability or Retained Liabilities, other than as expressly provided herein or in agreements made by the Debtors and/or the Purchaser on the record at the Sale Hearing or in the MPA.

EE. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign [*28] the Purchased Contracts to the Purchaser in connection with the consummation of the 363 Transaction, and the assumption and assignment of the Purchased Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Purchased Contracts being assigned to, and the liabilities being assumed by, the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and, accordingly, such assumption and assignment of the Purchased Contracts and liabilities are reasonable, enhance the value of the Debtors' estates, and do not constitute unfair discrimination.

FF. For the avoidance of doubt, and notwithstanding anything else in this Order to the contrary:

   • The Debtors are neither assuming nor assigning to the Purchaser the agreement to provide certain retiree medical benefits specified in (i) the Memorandum of Understanding Post-Retirement Medical Care, dated September 26, 2007, between the Company and the UAW, and (ii) the Settlement Agreement, dated February 21,

SEAN CORGAN

Case ID: 140500377

Control No.: 14060259